1  | **RANDALL B. HAMUD, ESQ. (SBN 047958)**
2  | **ATTORNEY AT LAW**
3  | **4225 Executive Square, Suite 600**
   | **La Jolla, CA 92037**
4  | **Tel: 619-696-0815**
   | **Fax: 619-649-2262**
5  | **Email: hamudlawyer@gmail.com**
6  |
7  | **Attorney for Plaintiffs:**
   | **Luis Jesus Lobaton, Hedy Julca,**
8  | **Diego Steven Lobaton, and**
9  | **Bruce Chourp**

## UNITED STATES DISTRICT COURT

## IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA

**LUIS JESUS LOBATON, an individual; HEDY JULCA, an individual; DIEGO STEVEN LOBATON, an individual; and BRUCE CHOURP, an individual, by and through his Guardian Ad Litem, KATHERINE LOBATON,**

                    **Plaintiffs,**

**vs.**

**CITY OF SAN DIEGO, a municipal corporation; the SAN DIEGO POLICE DEPARTMENT; SHELLEY ZIMMERMAN, an individual,  Chief of the San Diego Police Department; T. WETZEL,  an individual; MICHAEL USREY,  an**

Case No: ___'15CV1416 GPC RBB___

**COMPLAINT FOR:**

1) **FALSE ARREST (42 U.S.C. SEC. 1983)**
2) **EXCESSIVE FORCE (42. U.S.C. SEC. 1983)**
3) **FAILURE TO SCREEN AND HIRE (42 U.S.C. SEC. 1983)**
4) **FAILURE TO  TRAIN (42 U.S.C. SEC. 1983)**
5) **FAILURE TO SUPERVISE AND DISCIPLINE (42 U.S.C. SEC. 1983)**
6) **DEFACTO POLICY OF USE OF EXCESSIVE FORCE (42 U.S.C. SEC. 1983)**

1

individual;  NATHAN PARGA, an
individual; KELVIN LUJAN, an
individual; SAM EULER, an
individual; ALI BAKHSHI, an
individual, and TWO UNKNOWN
SAN DIEGO POLICE OFFICERS,

                        Defendants.

//

//

//

//

//

//

//

//

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

7)  INADEQUATE SYSTEM OF
    INVESTIGATION (42 U.S.C. SEC.
    1983)
8)  HARRASSMENT (42 U.S.C. SEC.
    1983)
9)  ASSAULT AND BATTERY
10) INTENTIONAL INFLICTION OF
    EMOTIONAL DISTRESS
11) VIOLATION OF
    CONSTITUTIONAL RIGHTS
    (CAL. CIV. CODE SEC. 52.1)
12) NEGLIGENT INFLICTION OF
    EMOTIONAL DISTRESS
13) INVASION OF PRIVACY
14) VIOLATION OF CIVIL CODE
    SEC. 1708.8
15) NEGLIGENCE
16) INJUNCTIVE RELIEF

JURY TRIAL DEMANDED

I.

SUMMARY OF THE CASE

1.  On July 29, 2014, Plaintiffs Luis Jesus Lobaton (then twenty years old,

hereinafter referred to as "Luis") and Hedy Julca (hereinafter referred to as "Hedy")

operated that certain business known as Legacy Mobile, aka Lucky Star Mobile

2

(hereinafter referred to as "the Store"), located at 4619 University Avenue, San Diego, CA 92015, in the "City Heights" district.  At that time, Luis, Hedy, Diego Steven Lobaton (then nineteen years old, hereinafter "Diego), Bruce Chourp (then three years old, hereinafter "Bruce"), and Sam Chourp (hereinafter "Sam") were living in the Store.  Luis, Diego, and Bruce are Hedy's children.  Sam is Hedy's boyfriend and Bruce's natural father.  Plaintiffs are Hispanic.

2.  At approximately 10:30 p.m., on July 29, 2014, after the store was closed for business, without warrants, probable cause, or reasonable belief, six San Diego Police Officers, acting under color of law, within the course and scope of their employment , and while exercising their authority as police officers, illegally assaulted, detained, and arrested Diego outside the Store and then, without permission or privilege, burst into the Store and, in the presence of little Bruce, illegally detained, arrested assaulted, and battered Luis and Hedy in violation of their rights according to the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.

3.  After transporting Luis and Hedy to jail, where they were "booked" and incarcerated, the offending police officers conspired with each other and with certain supervisors to compose, file, review, authorize, and/or ratify falsified official reports of

the incident.  (For convenience, the acts or omissions that are the subject of this lawsuit will be collectively described as "the incident.") The Store's video surveillance system recorded the incident, and the video records materially contradict the reports.

4.  In the San Diego Superior Court, Luis was charged with one count of obstructing police officers in the performance of their duties.  (**People v. Luis Lobaton**, Case No. M184993.)  The case against him was dismissed on October 17, 2014.  No criminal charges were ever brought against Hedy.

5.  Plaintiffs Luis, Hedy, Diego, and Bruce have suffered emotional distress and/or physical injuries arising from the incident and have brought this lawsuit in pursuit of their remedies according to 42 U.S.C. 1983 and pendant-jurisdiction, state-law causes of action.  Bruce is pursuing a pendant-jurisdiction, state-law cause of action for negligent infliction of emotional distress.

## II.

### GENERAL ALLEGATIONS

### A. JURISDICTION AND VENUE

*//*

6.   Jurisdiction is proper in the United States District Court for the Southern

District of California pursuant to 28 U.S.C. sec. 1331 and 28 U.S.C. secs. 1343(3) and

(4).  The Court has supplemental jurisdiction over the pendant state law claims

pursuant to 28 U.S.C. sec. 1367(a).  The incident occurred in the City of San Diego in

and about the Store.  At all times, Plaintiffs resided in the City of San Diego.  The

named and unnamed entity and individual Defendants do business in, work in, and/or

live in the City or County of San Diego, California.  Exclusive of interest and costs, the

matter in controversy exceeds the sum or value of seventy-five thousand dollars

($75,000.00).

## B.  THE PARTIES

7.   Plaintiffs are Hispanic.  Hedy was born in Peru.  Her sons, Luis, Diego, and

Bruce, were born in the United States of America.   Luis and Hedy owned and

operated the Store; and the family also lived in the rear of the Store.

8.   Defendant City of San Diego is a municipal corporation that operates the San

Diego Police Department (hereinafter referred to as "the Department" or

"Department").  Defendant Shelley Zimmerman (hereinafter referred to as "Chief

Zimmerman" or "Shelley Zimmerman") is the Chief of the San Diego Police

Department and as such is the highest-ranking, final, official policymaker and decision-maker within the Department.  Chief Zimmerman and Defendants T. Wetzel, Michael Usrey, Nathan Parga, Kelvin Lujan, Sam Euler, and Ali Bakhshi and the two, unnamed police officers who entered the Store on the night of July 29, 2014, are all sworn police officers employed by the Department.  As such, each of them had a duty of care to Plaintiffs specifically, and to the members of the public generally, to enforce the laws reasonably and in accordance with constitutional requisites and to prevent, deter, and stop acts of excessive force occurring in their presence.  Unless otherwise specifically stated *infra*, each named and unnamed individual, non-entity Defendant is sued in his or her ***individual capacity***.

### III.

### THE FACTS

### A.  THE NIGHT OF JULY 29, 2014

9.   At approximately 10:30 p.m., on July 29, 2014, Luis, Hedy, Bruce, and Sam were inside the Store, which was closed for business.  Diego was attempting to enter the Store by using his key to unlock the front door.  As he was unlocking the front door, six San Diego police officers (Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department), while

wearing their symbols of authority, i.e., badges, uniforms, and/or guns;  while acting

under color of law, i.e., various statutes, ordinances, regulations, and official written

and unwritten policies, customs, and usages with the force of law;  while acting within

the course and scope of their employment as San Diego police officers;  and while

exercising their authority as police officers, without search or arrest warrants, probable

cause, reasonable belief, privilege, or permission, detained and/or arrested Diego

outside the Store and then, without permission or privilege,  forced their way into the

Store and, in the presence of Bruce, criminally assaulted and battered Luis and Hedy

(Cal. Pen. Code secs. 240 [assault] and 242 [battery].)  They then illegally detained

and arrested Luis and Hedy and transported them to jail, where they were "booked"

and incarcerated.

10.  Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two

unnamed members of the Department, and each of them, then conspired with each

other and with supervisors Defendants T. Wetzel (a Detective) and Michael Usrey (a

Sergeant) to compose, review, authorize, and/or ratify falsified official reports of the

incident, which were then filed with the Department

11.  The incident was recorded by the Store's multi-camera, video surveillance

system.  Several cameras inside and outside the Store captured images of the incident

from several locations.  By comparing the video records with the official reports,

Plaintiffs have identified Defendants Nathan Parga, Kelvin Lujan, Sam Euler, and Ali

Bakhshi as the officers who initially confronted Diego, Luis, and Hedy.  According to

the reports, Officer Lujan physically struck Luis with his fists; and Officer Parga

grabbed Hedy by the neck and head and wrestled her to the ground.  Officers Euler and

Bakhshi assisted them during the assaults.

12.   During the confrontation, two other officers also entered the Store to assist

Officers Parga, Lujan, Euler, and Bakhshi.  One was in uniform, and the other wore

plain clothes with a police badge hanging from a string around his neck.  The names of

these two police officers were not mentioned in the official reports.  When Plaintiffs

discover their names, they will avail themselves of the provisions of F.R.Cv.P.Rule 15

to include them as named defendants herein.

13.   In perpetrating the acts or omissions complained of, Defendants T. Wetzel,

Michael Usrey, Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two

unnamed members of the Department, and each of them, acted as each other's alter

egos, agents, servants, employees, and authorized representatives, and had notice of,

consented to, and/or ratified the acts or omissions of each other.  Further, as the

highest-ranking administrators and final, official policymakers of the Department,

Defendants City of San Diego, San Diego Police Department, and Chief Zimmerman had notice of, consented to, and/or ratified the acts or omissions of each other and of Defendants T. Wetzel, Michael Usrey, Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and the two described, unnamed members of the Department.

## B.  THE DEPARTMENT'S PROBLEMATIC HISTORY

14.  In recent years the Department has been so roiled by police misconduct involving constitutional deprivations and excessive force that the Office of Community Oriented Policing Services of the United States Department of Justice, in conjunction with the Police Executive Research Forum, undertook a study of the Department.  The results of the study were reported on March 17, 2015, in a report entitled: "Critical Response Technical Assessment Review: Police Accountability – Findings and National Implications of the San Diego Police Department (hereinafter referred to as "the Report" or "Report")."  The Report is found at:

http://www.cops.usdoj.gov/outside.asp?http://ric-zai-inc.com/ric.php?page=detail&id=COPS-W0756.  The Report initially noted that its mission was not to investigate criminal conduct of individual officers or a "broad-scale investigation of constitutional violations."  Rather, its purpose was to make recommendations for the deterrence and prevention of future misconduct.

Weaknesses were identified that "may have contributed to allowing misconduct . . . to go undetected." (Report, p. vii.)

15.  Seventeen police misconduct cases were studied, three of which involved internal Department cover-ups of criminal misconduct by sworn police officers. (Report, p. 14.) The study identifies "gaps" the Department's policies and procedures and especially notes the lack of consistent supervision at the first-line sergeant level. For fiscal year 2010 – 2015, acting sergeants comprised 11 – 23% of authorized sergeant slots.  Acting sergeants had less authority than regularly appointed sergeants, and the former's reduced authority detrimentally affected their ability to "detect signs of possible misconduct."  (Report, pp. 2-3.)  The study proposed forty recommendations to improve the functioning of the Department.

16.  However, in certain respects the Report fell short in its treatment of some of the Department's more serious problems.  For example, it only recommended that the Citizen's Review Board (hereinafter "CRB") be provided with updates of citizen complaints, which are investigated by the Department's Internal Affairs Division. (Report, p. 6.)  It failed to address the documented shortcomings of the Division and the CRB.

17.  The CRB is ineffective precisely because it must rely on the Internal Affairs Division to investigate complaints filed with the Board.  The Division has a history of "whitewashing" police officer misconduct.  And the CRB itself has been under fire because it has no staff, no power to compel testimony, and no power to obtain documents.  Even worse, its findings are often ignored by the Department.  Since 2009, only two percent of citizen-initiated complaints of police misconduct have resulted in officer discipline.  Of these 162 allegations, *eighty percent have alleged the use of excessive force*.  A 2012 San Diego grand jury report about the CRB raised several red flags: the CRB allows member of the Internal Affairs Division to sit in on its executive sessions, possibly stifling the Board's independence; Internal Affairs personnel have been overheard telling CRB members that they never want any dissenting votes reaching the mayor or the chief of police; an atmosphere of fear and intimidation has been perpetuated by some board members; and board leadership is weak.  (Doug Porter, "Policing the Police: San Diego's Problems," **San Diego Free Press**, January 13, 2015.)

18.  If the Department is serious about deterring future misconduct, it need only look to the City of Cleveland Police Department.  Recently, that Department and the United States Department of Justice reached a settlement aimed at eradicating a

historic pattern of unconstitutional policing abuses.  Part of the solution was to appoint a civilian to head the internal affairs unit.  (Mitch Smith and Matt Apuzzo [NTY News Service], "Cleveland Oks Police Oversight," **San Diego Union Tribune**, May 27, 2015, p. A1.)  Were the San Diego Police Department do likewise, the Internal Affairs Division's detrimental influence on the CRB would be eliminated.  Additionally, providing the CRB with funding, staff, and independent investigatory powers would ensure the proper investigation of future complaints about police misconduct.

19.  The Report also fell short because it failed to address substantively the historic "code of silence" and culture of "cover-up" that have afflicted the Department for many years.  Those policies will be more thoroughly discussed *infra*.  But one example stands out: the Report passingly mentions the Department's adoption on April 29, 2014, of a new policy requiring police officers to report misconduct by their peers.  However, it says nothing about the concurrent *failure* to adopt an anti-retaliation policy that would protect reporting officers from reprisals.  (Report, p. 49.)  Reporting officers need protection.  For example, on January 21, 2015, a San Diego Police sergeant filed a lawsuit against the City for *retaliation* after he complained about a racist cartoon used in training in August 2014.  He was reassigned and passed over for promotion after complaining about the cartoon.  (R. Stickney and Liberty Zabala,

"SDPD Sgt. Claims Retaliation After Complaining About Offensive Cartoon,

**NBC7.com**, January 22, 2015."  Obviously, the new reporting policy offered him no

safe harbor.

20.  The instant case is another example of the failure of the reporting policy.

Exactly *three months* after the Department's adoption of the policy, the Defendants

herein illegally deprived Plaintiffs of their constitutional rights, inflicted injuries on

them, and then conspired together to cover up their misconduct.  None of those

involved stepped forward and told the truth.  Without an anti-retaliation policy, the

reporting policy is merely "form over substance."

21.  One of the catalysts for the Report was the arrest of San Diego Police

Sergeant Anthony Arevalos on March 11, 2011, for the sexual assault of a female

detainee.  (Report, p. 10.)  Arevalos was a veteran San Diego police officer and sexual

predator who for many years had been preying on female detainees while he was on

duty.  Though his deviant behavior was well known throughout the Department by

2010, the "code of silence" protected him from punishment.  He even came to be

known as the "Teflon cop" because time and again he had escaped punishment.  Only

after his misconduct was captured by a video surveillance camera was he arrested.

Ultimately he was convicted of multiple felonies and now sits in prison.  (Liam Dillon,

"'Teflon' Cop Avoided Serious Investigation for Years," **Voice of San Diego**,

February 27, 2014.)

22.  Arevalos's misconduct resulted in the filing of a lawsuit in the San Diego

Superior Court that by removal jurisdiction found its way into the United States

District Court for the Southern District of California, to wit: **Jane Doe v. the City of**

**San Diego, et. al**., Case  No. 12-cv-00689-MMA.  Lawsuits were also filed on behalf

of thirteen other women who were alleged to have been assaulted by Arevalos between

2009 and 20011.

23.  The evidence in the "**Jane Doe**" Arevalos case well documented the

existence of the "code of silence" among Department police officers by which they did

not report each other's misconduct and assisted each other to cover up misdeeds.  The

"code of silence" was so ingrained in the Department's members that it essentially

became a widespread, unwritten, official policy of the Department that resulted in

injury to Jane Doe and others.  A two-tiered system of justice existed in the

Department: one for the police officers themselves and another one for everybody else.

The officers knew that they could perpetrate misconduct with impunity without fear of

discipline.

24.   In the instant lawsuit, Plaintiffs anticipate requesting discovery from the City of San Diego of the full panoply of documents in its possession that shed any light on the Department's "code of silence" and history of cover up, including several depositions taken in the **Jane Doe** case.  Sexual assaults may generate the headlines, but excessive force cases like this one are of the same ilk: violations of the victims' constitutional rights.

25.   Evidence in the **Jane Doe** case also demonstrated the critical importance of an anti-retaliation policy.  In at least one instance involving Arevalos, a fellow officer tried to report the former's misconduct and even offered photographic evidence of the misconduct.  Instead of being rewarded for coming forward, that officer was subjected to reprisals; and his corroborating evidence was destroyed by Arevalos and the latter's then supervisor.  (See generally, Liam Dillon, "'Teflon' Cop Avoided Serious Investigation for Years, **Voice of San Diego**, February 27, 2014.)  In spite of the Department's history of such reprisals, when Chief Zimmerman promulgated the reporting policy on April 29, 2014, she doomed it to failure by not concurrently adopting an anti-retaliation policy.

26.   And Arevalos was not alone.  On October 13, 2013, San Diego Police Officer Christopher Hayes, a four-year veteran of the Department, allegedly sexually

assaulted a different "Jane Doe" while he was on duty.   He resigned from the

Department in February, 2014, and in August 2014, pled guilty to a felony count of

false imprisonment and two misdemeanor counts of assault under color of authority.

He was sentenced to a year in county jail and placed on probation for three years.

(Dana Littlefield, "Former Police Officer, SDPD Sued by Woman He Groped," **San

Diego Union Tribune**, December 12, 2014, p. B3.)

27.  Like Arevalos, Hays's misconduct resulted in the filing of several lawsuits

against the City by women claiming to have been sexually assaulted by Hays.  One of

those lawsuits is still pending in this Court: **Jane Doe v. Christopher Hays, et. al.**,

Case No. 37-2014-0042669-CU-NP-CTL.

28.  Another woman also came forward claiming to have been sexually

assaulted by yet another San Diego police, David Moncrief, while he was on duty.  She

alleged that he had groped her and exposed himself to her after arresting her in 2013.

He was not charged with any crimes and left the Department.  She later filed suit

against the City.  (Sharon Chen, "City approves . . . in SDPD misconduct lawsuits,"

**Fox5sandiego.com**, April 28, 2015.)

29.  In an effort to stem the tide of police misconduct inundating the

Department, Chief Zimmerman authorized the issuance of "body-worn cameras," or

"body cameras," to be worn by police officers on duty to provide an objective record of interactions between the police and citizens.  By September, 2014, only 150 officers were wearing them.  (Dana Littlefield, "Arevalos victim . . .," **San Diego Union Tribune**, September 25, 2014.)  [Note that the Report had only recommended body cameras as training tools.  (Report, p. 4.)]  (None of the officers involved in the incident herein appeared to be wearing body cameras.  Plaintiffs apparently possess the only video records of the incident.)

    30.  But even the body-camera policy has gotten off to a bad start.  On April 30, 2015, while wearing such a camera, Officer Neal Browder shot to death one Fridoon Zalberg Rawshannehad (aks Fridoon Zalberg Nehad) in the Midway District of the City of San Diego.  For as yet unexplained reasons, the body camera was not operating at the time of the shooting.  Interestingly, the officers who wear them can turn them on and off at will.  (Dana Littlefield, "Family Files Claim Over Fatal Police Shooting," **San Diego Union Tribune**, May 30, 2015, p. B3.)

    31.  On November 12, 2014, Chief Zimmerman was shown the Plaintiffs' video records of the incident.  The records clearly depicted criminal misconduct by the six police officers who invaded Plaintiffs' business and abode on July 29, 2014.   And the filing of falsified official reports also raises the specter of criminal violations.  Yet,

Chief Zimmerman never initiated any formal criminal investigations or judicial

proceedings by which to bring the offending officers to justice.

32.  The Department also has a problem with racial stereotyping.  At this

writing, it is evaluating itself to determine whether its officers are guilty of racial

profiling in traffic stops.  Recent data indicate that in 2014, of 144,164 traffic stops,

Hispanic drivers represented 30.2% and African Americans 11.2%; whereas they

comprise 27% and 5.5%, respectively, of the City's adult population.  (Tony Perry,

"Police study racial bias allegations," **Los Angeles Times**, March 4, 2015, page B6.)

33.  Plaintiffs are Hispanic, and Luis has been repeatedly harassed by known

and unknown members of the Department, potentially because of his ethnicity.  San

Diego police officers stopped, detained, and/or handcuffed him on July 28, 2014, at his

uncle's tire store in City Heights, not far from the Store; on July 29, 2014 (the ncident),

and on December 24, 2014, again inside the Store.  On July 28th and December 24th,

the offending officers released Luis without any further explanation of the reasons for

his detentions.

34.  The incident itself and the harassment directed at Luis appear to be the

norms in the City Heights district, if not in the City as a whole.  City Heights is a

heavily-Hispanic community whose members have long been the victims of the use of

excessive force and unreasonable conduct by San Diego police officers, especially at night.  In City Heights, the Department's internal, two-tier system of justice finds expression in its streets: the "good guys and good girls" are the San Diego police officers, and the "bad guys and bad girls" are everybody else.

35.  In 2014, there were 16,238 incidents in which San Diego police officers used force.  The Department had nearly twice as many officer-involved shootings than any other city among the four mid-sized cities surveyed.  The twenty-five officer-involved shootings in San Diego for 2012, 2013, and 2014, involved at least twelve fatalities.  On January 12, 2015, the City Heights community protested the fatal shooting of Victor Ortega, who was allegedly shot by Department officers on June 4, 2012, as he lay face down on the ground while handcuffed.  On January 19, 2015, the Coalition Against Police Violence conducted a four-mile March from the City Heights Library to increase awareness about racial profiling and police brutality in that community.   (Doug Porter, "Policing the Police: San Diego's Problems, **San Diego Free Press**, January 13, 2015.)  When those police officers illegally invaded Plaintiffs' Store and abode on the night of July 29, 2014, and illegally detained, arrested, assaulted, and/or battered them, it was "business as usual" in City Heights.

//

19

## C.  THE VIDEO SURVEILLANCE SYSTEM

36.  As previously stated, on July 29, 2014, at approximately 10:30 p.m., Plaintiffs Luis, Hedy, and Bruce were inside the store.  Though the Store was closed for business, the lights in the living area at the rear of the Store also illuminated the front of the Store.  Family members were able to navigate the front of the Store without activating the overhead lights in the front.  The video surveillance system recorded detailed images of the incident throughout the front and rear of the Store.  Of pertinence to this case are three cameras: one at the rear of the inside of the Store facing toward the front, another camera inside the Store facing from the front door toward the rear, and a third camera outside the Store facing the area adjacent to the front entrance.  A common "time stamp" recorded the hour, minute, and second, of each camera's images.  Video images caught by the inside camera facing from the rear of the Store toward the front and from the outside camera facing the front entrance can be found at the following link: http://www.voiceofsandiego.org/topics/public-safety/their-crime-walking-into-their-own-home/.  (Control-Click activates the link.)  According to the time stamps, the attacks were recorded between 10:28 p.m. and 10:32 p.m.

//

### D.  THE INCIDENT REPORTS

37.  As part of the criminal discovery in the dismissed case of **People v. Luis Lobaton, supra**, Luis's criminal attorney was provided with three pertinent, official reports of the incident: San Diego Police Department Investigator's Report authored by "Usrey," and approved by "Sgt. T. Wetzel," dated July 29, 2014; San Diego Regional Arrest/Juvenile Contact Report dated July 29, 2014, authored by Police Officer Kelvin Lujan; and a similarly entitled report authored by Police Officer Ali Bakhshi written on even date.   The reports contain material misstatements of fact directly contradicted by the video records.

38.  **Pertinent excerpts from the reports with comments:**

**"The male, Diego Lobaton, was agitated and was trying to lock the front door." (Usrey, p. 1.)**

(The video record shows Diego unlocking the front door with his key and cooperating with the police officers.  At no time did he attempt to re-lock the front door.)

**"[A]s he [Lujan] started to open the [front] door further, Julca grabbed it and pulled it shut."  (Usrey, p. 2.)**

(The video records do not reveal any attempt by Hedy to close the door at any time during the incident.)

**"At no time did anyone tell him it was their business."  (Usrey, p. 3.)**

(From the moment the police officers originally approached Diego, and during

all of their **initial** interactions with the police officers, Diego, Hedy, and Luis

told them that the Store was owned by them and that they lived inside.)

**"Officer Lujan grabbed him [Luis] by the arm . . .."  (Usrey, p. 2)**

(Indeed, Officer Lujan grabbed Luis's right hand with his own left hand and

used his right hand to pummel Luis with blows to the head.)

**"… Lobaton [Luis] swung at him [Lujan] twice with a closed fist, but missed.  Lobaton was now in a fighting or boxer stance.  He had squared his shoulders to him [Lujan] and his left leg was in front of his right.  Both hands were at chest level, and his hands were clenched in a fist." (Usrey, p. 2.)**

(The video records do not show Luis stopping, standing, or taking any kind of a

"stance," as he backpedaled toward the rear of the store in a failed attempt to

avoid the fusillade of blows from Officer Lujan.)

**"The two [Lujan and Luis] began swinging at each other, and Lujan was able to strike him [Luis] in the shoulder and the face, causing Lobaton to give up."  (Usrey, p. 2.)**

(The video records completely contradict this statement.  Officer Lujan actually

struck Luis five times, and Luis never threw a punch at anyone.)

**"After talking to Diego they learned it is a family cellphone business owned and operated by Julca.  Diego and Luis live in the back."  (Usrey, p. 2.)**

(Diego told the police officers who initially approached him on the sidewalk that this was a family business and that the family lived on the premises.  Hedy and Lujan also conversed with the officers at the open front door and told them it was their store and they lived inside.)

**"I engaged the male, identified as Diego Lobaton (10-06-94) . . . I observed Diego . . . holding a set of keys.  Lobaton attempted to lock the doors to the business as he was saying it was his brother who had entered the store." (Lujan, p. 3.)**

(The video records reveal that at **no time** did Diego attempt to lock the front door.  In fact, he unlocked the door as the police officers were approaching him; and his hands never re-visited the door's lock.)

**"As I pulled the door open to look inside Julca pulled the door shut on me. Believing that Julca was attempting to conceal the possibility of a burglary in progress, I pulled the door open to keep a visual of the two subjects in the doorway."  (Lujan, p. 3.)**

(The video reveals that at no time did Hedy ever attempt to pull the door shut.)

**"At no time during my contact with Lobaton did he or any other subjects mention their association with the business until the incident was over." (Lujan, p. 4.)**

(Luis, Hedy, and Diego will testify otherwise.)

23

**"I asked him [Lobaton] to come out of the store . . . Lobaton refused and as he did I reached in to grab Lobaton's arm and remove him from the inside of the store.  Lobaton pulled away from me and began walking backwards . . . I moved to the right of Julca and followed Lobaton into the business." (Lujan, p. 4.)**

(The video records show Officer Lujan holding Luis's right hand with the former's left hand and the two of them simultaneously moving towards the rear of the Store as Officer Lujan immediately strikes Luis in the head with his right hand/fist.)

**"I continued advancing on Lobaton and he now began to swing his arms and fists in my direction in attempts to strike me.  I began to swing my arms and fists toward Lobaton to prevent him from striking me.  I was able to punch Lobaton in his upper right shoulder.  The strike pushed Lobaton into a wall.  Lobaton continued swinging at me when Lobaton went into the wall.  During the struggle, I punched Lobaton on the front of his face.  At this point, Lobaton began yelling, 'Ok,Ok, I quit![sic]  Officer A. J. Bakhshi #6578 arrived on scene and assisted me with taking Lobaton into custody."  (Lujan, p. 4.)**

(This scenario is completely unsupported by the video records.  Officer Lujan pushed Hedy aside, charged into the store, grabbed Luis's left hand, and struck Luis five times [four times in the head and once in the midsection] as Luis backpedaled toward the rear of the store to avoid Officer Lujan's many blows.

**"While in the process of taking Lobaton into custody, a female, later identified as HedyJulca (02-22-72), moved towards my rear and began attempting to pull me away from Lobaton by grabbing onto my shoulders**

**and pulling.  Officer N. Parga #8222 arrived on scene and was able to remove Julca away from me."** (Lujan, p. 4.)

(The video records show Hedy not resisting but rather trying to protect Luis from the beating being administered by Officer Lujan in violation of Cal. Pen. Code secs. 240 and 242.  California law would allow actual resistance in this scenario: Cal. Pen. Code secs. 692 [resistance to public offense], 693 [resistance sufficient to prevent the offense], and 694 [other person making resistance] Ironically, Luis and Hedy never offered any resistance at all.  In fact, Officer Parga grabbed Hedy by the back of the neck with a "C-Clamp" hold and forcibly rotated her head and body 180 degrees and forcibly bent her head and neck downward as he threw her to the floor, at which point he and another officer fell on top of her.)

**"As Officer Lujan attempted to contact LOBATON [Luis], I briefly lost sight of them as they stepped into the darkness.  I then immediately entered into the business as to assist Officer Lujan."**  (Bakhshi, p. 1.)

**"As my eyes adjusted to the darkness of the business, I could see LOBATON standing with one foot in front of the other with his fist clenched in a very aggressive fighting stance.  Officer Lujan than began taking LOBATON into custody."**  (Bakhshi, p. 2.)

(The video record shows no such fighting stance assumed by Luis at any time.)

**"As Officer Lujan and I were attempting to place LOBATON in custody, I could feel JULCA reaching over my back.  JULCA grabbed hold of Officer**

**Lujan in an attempt to pull him off LOBATON.  At that time I used my body to shield JULCA from grabbing at Officer Lujan.  JULCA continued to try and get past me to grab a hold of Officer Lujan.  Officer Parga pulled JULCA off of me and away from the contact . . ..." (Bakhshi, p. 2.)**

(The video records show Hedy not resisting but rather trying to protect Luis from the beating being administered by Officer Lujan in violation of Cal. Pen. Code secs. 240 and 242.  California law would allow actual resistance in this scenario: Cal. Pen. Code secs. 692 [resistance to public offense], 693 [resistance sufficient to prevent the offense], and 694 [other person making resistance] Ironically, Luis and Hedy never offered any resistance at all.)

39.  The video records reveal that while Luis and Hedy were being assaulted and beaten by the offending San Diego police officers inside the Store, little Bruce Chourp was watching from a few feet away.  He saw everything, including the officers forcibly removing his brother and mother from the Store.

40.  In order to avail themselves of their rights under the federal Civil Rights Act, 42 U.S.C. sec. 1983, et. seq., and the applicable state constitutional, statutory, and common law, Plaintiffs were constrained to retain attorneys to represent them in this matter.  As part of their damages, Plaintiffs will seek reimbursement of their attorneys' fees as provided by 42 U.S.C. sec. 1988 and Cal. Civ. Code sec. 52(a).

41.  Plaintiffs are informed and believe, and thereon allege, that Defendant City of San Diego and/or the San Diego Police Department are vicariously liable for all damages that may be assessed against the individual Defendants herein, and each of them, pursuant to California Government Code section 815.2.

42.  Plaintiffs have complied with the statutory requisites of the Government Claims Act (Cal. Gov. Code sec. section 910) by filing Claims for Damages with the City of San Diego on January 14, 2015.  Said claims were rejected by the City by letter dated March 2, 2015.

## FIRST CAUSE OF ACTION: FALSE ARREST

### (Civil Rights Act, 42 U.S.C. sec. 1983) -

### BY PLAINTIFFS DIEGO, LUIS, AND HEDY

### AGAINST DEFENDANTS

### T. WETZEL, MICHAEL USREY,

### NATHAN PARGA, KELVIN LUJAN

### SAM EULER, ALI BAKSHI, AND

### TWO UNNAMED MEMBERS OF THE DEPARTMENT

43.  Plaintiffs repeat and re-plead as though fully set forth in this Paragraph 43 above paragraphs 1 through 42, inclusive.

44.  Defendants  Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, in and about the Store on the night of July 29, 2014, while acting under color of law, i.e., various statutes, ordinances, regulations, and official written and unwritten policies, customs, and usages with the force of law; while acting within the course and scope of their employment as San Diego police officers; and while exercising their authority as police officers, did intentionally, unlawfully, and maliciously detain, arrest, and imprison Diego, Luis, and Hedy by the use of unreasonable, illegal, offensive, excessive, non-consensual and/or injurious physical force  that directly, proximately, and substantially caused each Plaintiff emotional distress and/or physical injury.

45.  Plaintiffs Diego, Luis, and Hedy each have an established right according to the Fourth and Fourteenth Amendments of the United States Constitution to be free from wrongful detention, wrongful arrest, and summary imprisonment without due process of law, to wit:

> 42 U.S.C. sec. 1983 (in pertinent part):
>
> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory subjects, or causes to be subjected, any person of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the

party injured in an action at law, suit at equity or other proper proceeding for redress.

46.  On the night of July 29, 2014, Plaintiffs Diego, Luis, and Hedy were deprived of such rights, privileges, and immunities by Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them, who detained and/or arrested them without search or arrest warrants, probable cause, or reasonable belief.  Had such Defendants, and each of them, been acting reasonably, each would have known or should have known that his acts or omissions were illegal.

47.  Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them, then conspired with each other and with supervisors Defendant T. Wetzel and Defendant Michael Usrey to cover up their illegal behavior by composing, filing, reviewing, approving, and/or ratifying falsified official reports of the incident that intentionally, maliciously, and knowingly contained material misstatements of fact regarding the circumstances surrounding the detentions and/or arrests of Diego, Luis, and Hedy.

48.  The acts or omissions of Defendants T. Wetzel, Michael Usrey, Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unknown members of the

Department, and each of them, directly, proximately, and substantially caused

Plaintiffs Diego, Luis, and Hedy to suffer emotional distress and/or physical injury.

49.  As a direct, proximate, and substantial result of the acts or omissions of

Defendants T. Wetzel, Michael Usrey, Nathan Parga, Kelvin Lujan, Sam Euler, Ali

Bakhshi, and two unnamed members of the Department, and each of them, Plaintiffs

suffered emotional distress, shock, trauma, pain, suffering, nervous anxiety, and injury

to their health and strength, including not by way of limitation: lacerations; bruises;

muscle strains; headaches; double vision; exacerbation of pre-existing conditions; arm,

shoulder, back, and neck pain; and hand injuries.  Plaintiffs' injuries are of a

continuing nature and cannot be finally quantified at this time.  They will do so by the

time of trial.  Plaintiffs' damages are in excess of the Court's jurisdictional monetary

minimum.

50.  As a direct, proximate, and substantial result of the acts or omissions of

Defendants T. Wetzel, Michael Usrey, Nathan Parga, Kelvin Lujan, Sam Euler, Ali

Bakhshi, and two unnamed members of the Department, and each of them, Plaintiffs

Luis and Hedy have incurred costs for medical treatment for their injuries.  Because

their injuries are of a continuing nature, they cannot finally quantify them at this time.

They will do so at the time of trial.

51.  As a direct, proximate, and substantial result of the acts or omissions of Defendants T. Wetzel, Michael Usrey, Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them, Plaintiffs Luis and Hedy have suffered continuing injuries that resulted in lost earnings.  These losses cannot be finally quantified at this time.  Plaintiffs will do so at the time of trial.

52.  The acts or omissions of Defendants T. Wetzel, Michael Usrey, Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them, demonstrated evil and/or malicious intent and/or callous and/or reckless disregard for Plaintiff's rights, entitling Plaintiffs to the award of punitive damages as provided by federal law.

## SECOND CAUSE OF ACTION: USE OF EXCESSIVE FORCE

## (Civil Rights Act, 42 U.S.C. sec. 1983) – BY PLAINTIFFS

## LUIS AND HEDY AGAINST

## DEFENDANTS NATHAN PARGA, KELVIN LUJAN

## SAM EULER, ALI BAKSHI, AND TWO UNNAMED MEMBERS OF

## THE DEPARTMENT

53.  Plaintiffs repeat and re-plead as though fully set forth in this Paragraph 53 above paragraphs 1 through 42, inclusive.

54.  In and about the Store on the night of July 29, 2014, Defendants  Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, while acting under color of law, i.e., various statutes, ordinances, regulations, and official written and unwritten policies, customs, and usages with the force of law; while acting within the course and scope of their employment as San Diego police officers; and while exercising their authority as police officers, did intentionally, unlawfully, and maliciously illegally detain, arrest, and imprison Plaintiffs Luis and Hedy by the use of unreasonable, illegal, offensive, excessive, non-consensual, and injurious physical force that directly, proximately, and substantially caused each Plaintiff to suffer emotional distress and/or physical injury.

55.  Plaintiffs Luis and Hedy each have an established right according to the Fourth and Fourteenth Amendments of the United States Constitution to be free from the use of excessive force, wrongful detention, wrongful arrest, and summary imprisonment without due process of law, to wit:

42 U.S.C. sec. 1983 (in pertinent part):

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory subjects, or causes to be subjected, any person of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the

party injured in an action at law, suit at equity or other proper proceeding for redress.

56.  On the night of July 29, 2014, Plaintiffs Diego, Luis and Hedy were deprived of such rights, privileges, and immunities by Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them.  Had such Defendants, and each of them, been acting reasonably, each would have known or should have known that their acts or omissions were illegal.

57.  As demonstrated by the video records of the incident and by official reports filed by involved officers, Defendants Lujan and Parga were the officers who primarily assaulted, battered, and attacked Luis and Hedy by inflicting unreasonable, illegal, offensive, excessive, non-consensual, and injurious physical force on their persons in effecting their illegal detention, arrest, and/or summary imprisonment in violation of 42 U.S.C. sec. 1983 and Cal. Pen. Code secs. 240 and 242 .  Defendants Lujan and Parga's attacks on Plaintiffs were perpetrated with the assistance of and/or in the presence of Defendants Sam Euler, Ali Bakhshi, and two unnamed members of the Department.

58.  As sworn police officers, Defendants Sam Euler, Ali Bakhshi, and two unnamed members of the Department, had a duty of care toward Luis and Hedy to prevent, deter, and stop the use of excessive force against them by Defendants Lujan

and Parga.  They did not do so.  Instead, they breached their duty of care by

participating, assisting, facilitating, and/or conspiring in the infliction of unreasonable,

excessive, illegal, and injurious physical force on Luis and Hedy, and in the

subsequent cover-up.

59.  As a direct, proximate, and substantial result of the acts or omissions of

Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unknown

members of the Department, and each of them, Plaintiffs Luis and Hedy suffered

emotional distress, shock, trauma, pain, suffering, nervous anxiety, and injury to their

health and strength, including not by way of limitation: lacerations; bruises; muscle

strains; headaches; double vision; exacerbation of pre-existing conditions; arm,

shoulder, back, and neck pain; and hand injuries.  Plaintiffs' injuries are of a

continuing nature and cannot be finally quantified at this time.  They will do so by the

time of trial.  Plaintiffs' damages are in excess of the Court's jurisdictional monetary

minimum.

60.  As a direct, proximate, and substantial result of the acts or omissions of

Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed

members of the Department, and each of them, Plaintiffs Luis and Hedy have incurred

costs for medical treatment for their injuries.  Because their injuries are of a continuing

nature, they cannot finally quantify them at this time.  They will do so at the time of trial.

61.  As a direct, proximate, and substantial result of the acts or omissions of Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them, Plaintiffs Luis and Hedy have suffered continuing injuries that resulted in lost earnings.  These losses cannot be finally quantified at this time.  Plaintiffs will do so at the time of trial.

62.  The acts or omissions of Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them, demonstrated evil and/or malicious intent and/or callous and/or reckless disregard for Plaintiff's rights, entitling Plaintiffs to the award of punitive damages as provided by federal law.

**THIRD CAUSE OF ACTION: FAILURE TO SCREEN**

**AND HIRE PROPERLY (Civil Rights Act, 42 U.S.C. sec. 1983) –**

**BY PLAINTIFFS DIEGO, LUIS, AND HEDY**

**AGAINST DEFENDANTS CITY OF SAN DIEGO,**

**SAN DIEGO POLICE DEPARTMENT, AND**

**SHELLEY ZIMMERMAN**

63.  Plaintiffs repeat and re-plead as though fully set forth in this Paragraph 63 above paragraphs 1 through 42, inclusive.

64.  Defendants City of San Diego, San Diego Police Department, and Shelley Zimmerman, in her official capacity as the final, internal, policymaker and hiring-firing decision-maker of the Department, and each of them, knowingly failed to maintain adequate and proper Departmental screening and hiring policies, procedures, customs, and practices sufficient to educate Defendants T. Wetzel, Michael Usrey, Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them, and the Department's other police officers generally, regarding the constitutional rights of Plaintiffs Diego, Luis, and Hedy, and others similarly situated, in order to prevent San Diego police officers from systematically committing unconstitutional and illegal detentions and arrests and systematically employing unreasonable, excessive, illegal, and injurious physical force in their interactions with the public generally and with Plaintiffs specifically.

65.  On the night of July 29, 2014, Defendants T. Wetzel, Michael Usrey, Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them, knew that they could illegally detain, arrest, assault,

batter, and/or beat Plaintiffs Diego, Luis, and Hedy without substantive fear of

discipline or adequate post-incident investigation of the incident.

66.   Previous to July 29, 2014, Defendants City of San Diego, San Diego Police

Department, and Shelley Zimmerman, and each of them, had set in motion a series of

acts that resulted in widespread, official written and unwritten policies not authorized

by law that resulted in patterns, practices, customs, and usages, all having the force of

law, that were the moving forces that directly and proximately resulted in the

deprivation of Plaintiffs' constitutional rights on the night of July 29, 2014.  By

historically tolerating the Department's "code of silence" and attendant cover-ups; by

adopting a policy requiring the reporting of police officer misconduct without

concurrently adopting an anti-retaliation policy to protect reporting officers from

retaliation; by turning a long-term blind eye to misconduct by the likes of Officers

Arevalos, Hays, and Moncrief; by allowing the use of body cameras that can be

activated or deactivated at will by the individual officer; by not reforming the Internal

Affairs Department by appointing an independent civilian as its head; by not reforming

the CRB by funding it and empowering it to investigate reported police officer

misconduct independent of the Department; by not invoking criminal and/or formal

judicial investigations of the incident on and after November 12, 2014, when

Defendant Zimmerman became directly aware of the true facts surrounding the

incident; and by tolerating superficial investigatory and disciplinary procedures that

time and again merely "whitewashed" police officer misconduct, such Defendants, and

each of them, adopted and continue to adopt widespread, official written and unwritten

policies, customs, and usages with the force of law that presented  substantial risks of

serious constitutional injuries like those suffered by Plaintiffs Diego, Luis, and Hedy.

Such acts or omissions by such Defendants, and each of them, demonstrated their

deliberate indifference to and/or conscious disregard of Plaintiffs' constitutional rights.

67.  Such acts or omissions by Defendants City of San Diego, San Diego Police

Department, and Shelley Zimmerman, and each of them, also signaled to new police

officer recruits and newly hired police officers that there was a two-tier system of

justice at the Department.  Misconduct by Department police officers would be

tolerated by higher-ups to such a degree that subordinate officers knew or would have

known that each of them had his or her own "Teflon coating" and would have free rein

to inflict unconstitutional injuries on Plaintiff and others similarly situated with whom

they would interact after completing training.

68.  From the very nature of the job of police officer, Defendants City of San

Diego, San Diego Police Department, and Shelley Zimmerman , and each of them,

knew or should have known from the documented, historic, repetitive, and systemic unconstitutional misconduct of undisciplined San Diego police officers, including not by way of limitation, Arevalos, Hays, and Moncrief, that there existed a reasonably foreseeable, substantial risk of their subordinates' perpetrating unlawful arrests of and/or the use of unreasonable, excessive, illegal, and injurious physical force on Plaintiffs Diego, Luis, and Hedy specifically and others similarly situated.  Yet they did nothing to prevent such violations.

69.  Such acts or omissions by Defendants City of San Diego, San Diego Police Department, and Shelley Zimmerman , and each of them , were reasonably foreseeable and were affirmatively linked to, and more likely than not resulted in, Plaintiffs Diego, Luis, and Hedy's particular constitutional injuries, to wit: the deprivation of their rights to due process of law, equal  protection of the law, freedom from illegal seizure, and freedom from the use of unreasonable, excessive, illegal and injurious physical force in effecting the seizure of their persons in violation of the  Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.

70.  All times alleged in this Complaint, Defendants City of San Diego, San Diego Police Department, and Shelley Zimmerman, and each of them, had notice of, consented to, and/or ratified the acts or omissions of each other and of Defendants T.

Wetzel, Michael Usrey, Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them, and by such notice, consent and/or ratification further evinced the former's deliberate indifference to and conscious disregard of the constitutional rights of Plaintiffs Diego, Luis, and Hedy and others similarly situated.

71.  The acts or omissions of Defendants City of San Diego, San Diego Police Department, and Shelley Zimmerman, and each of them, directly, proximately, and substantially caused Plaintiffs Diego, Luis, and Hedy to suffer emotional distress and/or physical injuries.

72.  As a direct, proximate, and substantial result of the acts or omissions of Defendants City of San Diego, San Diego Police Department, and Shelley Zimmerman, and each of them, Plaintiffs Diego, Luis and Hedy suffered emotional distress, shock, trauma, pain, suffering, nervous anxiety, and injury to their health and strength, including not by way of limitation: lacerations; bruises; muscle strains; headaches; double vision; exacerbation of pre-existing conditions; arm, shoulder, back, and neck pain; and hand injuries.  Plaintiffs' injuries are of a continuing nature and cannot be finally quantified at this time.  They will do so by the time of trial. Plaintiffs' damages are in excess of the Court's jurisdictional monetary minimum.

73.  As a direct, proximate, and substantial result of the acts or omissions of Defendants City of San Diego, San Diego Police Department, and Shelley Zimmerman, and each of them, Plaintiffs Luis and Hedy have incurred costs for medical treatment for their injuries.  Because their injuries are of a continuing nature, they cannot finally quantify them at this time.  They will do so at the time of trial.

74.  As a direct, proximate, and substantial result of the acts or omissions of Defendants City of San Diego, San Diego Police Department, and Shelley Zimmerman, and each of them , Plaintiffs Luis and Hedy have suffered continuing injuries that resulted in lost earnings.  These losses cannot be finally quantified at this time.  Plaintiffs will do so at the time of trial.

**FOURTH CAUSE OF ACTION: FAILURE TO TRAIN PROPERLY**

**(Civil Rights Act, 42 U.S.C. sec. 1983) –**

**BY PLAINTIFFS DIEGO, LUIS, AND HEDY**

**AGAINST DEFENDANTS CITY OF SAN DIEGO, SAN DIEGO**

**POLICE DEPARTMENT AND SHELLEY ZIMMERMAN**

75.  Plaintiffs repeat and re-plead as though fully set forth in this Paragraph 75 above paragraphs 1 through 42, and 64 through 70, inclusive.

76.  Defendants City of San Diego, San Diego Police Department, and Shelley Zimmerman, in her official capacity as the final, internal, policymaker and hiring-firing decision-maker of the Department, and each of them, in like manner as their failure to screen and hire properly, knowingly failed to maintain adequate and proper Departmental training policies, procedures, customs, and practices, sufficient to educate Defendants T. Wetzel, Michael Usrey, Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them, and the Department's other police officers generally, regarding the constitutional rights of Plaintiffs Diego, Luis, and Hedy, and others similarly situated, in order to prevent San Diego police officers from systematically committing unconstitutional and illegal detentions and arrests and systematically employing unreasonable, excessive, injurious, and illegal physical force in their interactions with the public generally and with Plaintiffs specifically.

77.  Such inadequate training arose from the described policies, procedures, customs, and practices of Defendants City of San Diego, San Diego Police Department, and  Shelley Zimmerman, and each of them, in the exercise of their respective functions as the Department's operators, administrators, final policymakers, and final decision-makers, and manifested their deliberate indifference to, and/or

callous disregard of, the constitutional rights of Plaintiffs Diego, Luis, and Hedy, and others similarly situated.  Such acts or omissions were done with a conscious disregard for the substantial danger of constitutional injury and harm to Plaintiffs Diego, Luis, and Hedy and others similarly situated.

78.  At all times alleged in this Complaint, Defendants City of San Diego, San Diego Police Department, and Shelley Zimmerman, and each of them, had notice of, consented to and/or ratified the acts or omissions of each other and Defendants T. Wetzel, Michael Usrey, Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and by such notice, consent, and/or ratification further evinced the former's deliberate indifference and/or conscious disregard of the constitutional rights of Plaintiffs Diego, Luis, and Hedy and others similarly situated.

79.  The acts or omissions of Defendants City of San Diego, San Diego Police Department, and Shelley Zimmerman, and each of them, directly, proximately, and substantially caused Plaintiffs Diego, Luis, and Hedy to suffer physical injuries and emotional distress.

80.  As a direct, proximate, and substantial result of the acts or omissions of Defendants City of San Diego, San Diego Police Department, and Shelley Zimmerman, and each of them, Plaintiffs Diego, Luis and Hedy suffered emotional

distress, shock, trauma, pain, suffering, nervous anxiety, and injury to their health and strength, including not by way of limitation: lacerations; bruises; muscle strains; headaches; double vision; exacerbation of pre-existing conditions; arm, shoulder, back, and neck pain; and hand injuries.  Plaintiffs' injuries are of a continuing nature and cannot be finally quantified at this time.  They will do so by the time of trial.  Plaintiffs' damages are in excess of the Court's jurisdictional monetary minimum.

81.  As a direct, proximate, and substantial result of the acts or omissions of Defendants City of San Diego, San Diego Police Department, and Shelley Zimmerman, and each of them , Plaintiffs Luis and Hedy have incurred costs for medical treatment for their injuries.  Because their injuries are of a continuing nature, they cannot finally quantify them at this time.  They will do so at the time of trial.

82.  As a direct, proximate, and substantial result of the acts or omissions of Defendants City of San Diego, San Diego Police Department, and Shelley Zimmerman, and each of them , Plaintiffs Luis and Hedy have suffered continuing injuries that resulted in lost earnings.  These losses cannot be finally quantified at this time.  Plaintiffs will do so at the time of trial.

## FIFTH CAUSE OF ACTION:

## FAILURE TO SUPERVISE AND DISCIPLINE PROPERLY

**(Civil Rights Act, 42 U.S.C. sec. 1983) –**

**BY PLAINTIFFS DIEGO, LUIS, AND HEDY**

**AGAINST DEFENDANTS SHELLEY ZIMMERMAN,**

**T. WETZEL AND MICHAEL USREY**

83.  Plaintiffs repeat and re-plead as though fully set forth in this Paragraph 83 above paragraphs 1 through 42, and 64 through 70, inclusive.

84.  Defendants Shelley Zimmerman, in her individual capacity, T. Wetzel, in his individual capacity, and Michael Usrey, in his individual capacity, and each of them, as operators, administrators, final policymakers, final decision-makers, and/or supervisors of the Department, in like manner as their failure to screen and hire properly, knowingly failed to maintain adequate and proper supervisory and disciplinary Departmental policies, procedures, and customs sufficient to prevent Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them, from violating the constitutional rights of Plaintiffs, specifically, on July 29, 2014, and of citizens, detainees, and arrestees generally, and to prevent the consistent and systematic use of unconstitutional, illegal detentions and arrests and the use of unreasonable, excessive, injurious and illegal physical force by Defendants  Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi,

two unnamed members of the Department, and each of them, and other members of the Department generally.

85.  Defendants T. Wetzel is a Detective, and Michael Usrey is a Sergeant.  As such, they were supervisors who actually participated in the deprivation of Plaintiff Diego, Luis, and Hedy's constitutional rights by composing, filing, reviewing, approving, and/or ratifying falsified official reports as part of the scheme to cover up the true facts surrounding the incident.

86.  Based upon the Department's long history of constitutional deprivations, the widespread written and unwritten official policies undergirding those deprivations, and the inadequate attempts to correct the documented deficiencies, Defendants Shelley Zimmerman, T. Wetzel, and Michael Usrey, and each of them, had actual or constructive knowledge that their subordinates, including not by way of limitation, Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, two unnamed members of the Department , and other members of the Department, had been engaging in pervasive, unconstitutional misconduct, posing an unreasonable, substantial risk of constitutional injury to Plaintiffs Diego, Luis, and Hedy and others similarly situated.  Such Defendants' inadequate attempts to correct the documented deficiencies, and/or their actual participation in the cover-up of the true facts,

manifested their deliberate indifference to and/or tacit authorization of the violation of Plaintiffs' constitutional rights by such subordinates.  The affirmative link between such Defendants' historic inaction and Plaintiffs' constitutional injuries is manifested by the Department's "code of silence" and "Teflon culture" whereby police officers enjoy a two-tier system of justice within the Department that protects them from discipline for constitutional violations.

87.  Further, since November 12, 2014, Defendant Zimmerman had direct knowledge of the contents of the video surveillance records and access to the falsified police reports.  Her failure to initiate any formal criminal investigations or judicial proceedings by which to bring the offending officers to justice manifests her deliberate and/or callous indifference to and/or her tacit approval of the deprivation of Plaintiffs' constitutional rights and her continuing failure to prevent such violations generally.

88.  At all times alleged in this Complaint, Defendants Shelley Zimmerman, T. Wetzel, and Michael Usrey, and each of them, had notice of, consented to and/or ratified the acts or omissions of each other and of Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and by such notice, consent, and/or ratification further evinced the former's deliberate

indifference and/or conscious disregard of the constitutional rights of Plaintiffs and others similarly situated.

89.  The acts or omissions of Defendants Shelley Zimmerman, T. Wetzel, Michael Usrey, and each of them, directly, proximately, and substantially caused Plaintiffs Diego, Luis, and Hedy to suffer emotional distress and/or physical injuries.

90.  As a direct, proximate, and substantial result of the acts or omissions of Defendants Shelley Zimmerman, T. Wetzel, Michael Usrey, and each of them, Plaintiffs Diego, Luis and Hedy suffered emotional distress, shock, trauma, pain, suffering, nervous anxiety, and injury to their health and strength, including not by way of limitation: lacerations; bruises; muscle strains; headaches; double vision; exacerbation of pre-existing conditions; arm, shoulder, back, and neck pain; and hand injuries.  Plaintiffs' injuries are of a continuing nature and cannot be finally quantified at this time.  They will do so by the time of trial.  Plaintiffs' injuries are in excess of the Court's jurisdictional monetary minimum.

91.  As a direct, proximate, and substantial result of the acts or omissions of Defendants Shelley Zimmerman, T. Wetzel, Michael Usrey, and each of them, Plaintiffs Luis and Hedy have incurred costs for medical treatment for their injuries.

Because their injuries are of a continuing nature, they cannot finally quantify them at this time.  They will do so at the time of trial.

92.  As a direct, proximate, and substantial result of the acts or omissions of Defendants Shelley Zimmerman , T. Wetzel, and Michael Usrey, and each of them, Plaintiffs Luis and Hedy have suffered continuing injuries that resulted in lost earnings.  These losses cannot be finally quantified at this time.  Plaintiffs will do so at the time of trial.

93.  The acts or omissions of Defendants Shelley Zimmerman, T. Wetzel, Michael Usrey, and each of them, demonstrated evil and/or malicious intent and/or callous and/or reckless disregard for Plaintiffs' rights, entitling Plaintiffs to the award of punitive damages as provided by federal law.

**SIXTH CAUSE OF ACTION: DE FACTO POLICY OF**

**THE USE OF EXCESSIVE FORCE**

**(Monell doctrine of Municipal Liability - 42 U.S.C. sec. 1983) –**

**BY PLAINTIFFS LUIS AND HEDY**

**AGAINST DEFENDANTS CITY OF SAN DIEGO,**

**SAN DIEGO POLICE DEPARTMENT, AND**

**SHELLEY ZIMMERMAN**

94.  Plaintiffs repeat and re-plead as though fully set forth in this Paragraph 94, above paragraphs 1 through 42, and 64 through 70, inclusive.

95.  Defendants City of San Diego, San Diego Police Department, and Shelley Zimmerman (in her official capacity as the final, internal policymaker and decision-maker of the Department), as the operators, administrators, final policymakers, final decision-makers of the Department, through widespread, official written and unwritten policies, procedures, customs, and usages with the force of law, in like manner to their failure to screen and hire properly, have knowingly allowed the Department's police officers to engage in a repetitive, systematic pattern and practice of intentional misconduct consisting of assault, battery, the use of excessive and injurious physical force, the imposition of summary punishment without due process of law, false arrest, illegal detention, summary imprisonment without due process of law, and falsification of official records resulting in the denial of the rights, privileges, and immunities of members of the general public generally, and of Plaintiffs Luis and Hedy specifically, as guaranteed by the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.

96.  On the night of July 29, 2014, such acts or omissions by Defendants City of San Diego, San Diego Police Department, and Shelley Zimmerman, and each of them,

set in motion the series of events by which Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, wrongfully and illegally detained, arrested, assaulted, battered, and beat Plaintiffs Luis and Hedy in violation of their constitutional rights to be free from illegal detention and arrest and the use of unreasonable, excessive, illegal and injurious physical force against their persons as guaranteed by the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.

97.   Based upon the Department's long history of repeated constitutional deprivations, the widespread written and unwritten official policies, customs, and usages undergirding those deprivations, and the half-hearted, inadequate attempts to correct the documented deficiencies, Defendants City of San Diego, San Diego Police Department, and Shelley Zimmerman, and each of them, knew or should have known that the Department's code of silence and lackadaisical approach to discipline would motivate San Diego police officers, including not by way of limitation, Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them, to engage in pervasive, unconstitutional misconduct, posing an unreasonable risk of substantial constitutional injury to Plaintiffs Luis and Hedy and others similarly situated.   Such Defendants' inadequate

attempts to correct the Department's documented deficiencies manifested their

deliberate indifference to and/or tacit authorization of the violation of Plaintiffs'

constitutional rights.  The affirmative link between such Defendants' historic inaction

and Plaintiffs' constitutional injuries is manifested in the "Teflon culture" within the

Department by which a two-tier system of justice insulated offending officers,

including not by way of limitation, Defendants Nathan Parga, Kelvin Lujan, Sam

Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them,

from discipline for constitutional deprivations.

98.  Further, since November 12, 2014, Defendant Zimmerman had direct

knowledge of the contents of the video surveillance records and access to the falsified

official reports.  Her failure to initiate any formal criminal investigations or judicial

proceedings by which to bring the offending officers to justice manifests her deliberate

and/or callous indifference to and/or her tacit approval of the deprivation of Plaintiffs'

constitutional rights and her continuing failure to prevent such violations generally.

99.  At all times alleged in this Complaint, Defendants City of San Diego, San

Diego Police Department, and Shelley Zimmerman, and each of them, had notice of,

consented to and/or ratified the acts or omissions of each other and/or the acts and

omissions of Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and

two unnamed members of the Department, and by such notice, consent, and/or

ratification further evinced the former's deliberate indifference and/or conscious

disregard of the constitutional rights of Plaintiffs and others similarly situated.

100.  The acts or omissions of Defendants City of San Diego, San Diego Police

Department, Shelley Zimmerman, and each of them, directly, proximately, and

substantially caused Plaintiffs Luis and Hedy to suffer emotional distress and/or

physical injuries.

101.  As a direct, proximate, and substantial result of the acts or omissions of

Defendants City of San Diego, San Diego Police Department , and Shelley

Zimmerman, and each of them, Plaintiffs Luis and Hedy suffered emotional distress,

shock, trauma, pain, suffering, nervous anxiety, and injury to their health and strength,

including not by way of limitation: lacerations; bruises; muscle strains; headaches;

double vision; exacerbation of pre-existing conditions; arm, shoulder, back, and neck

pain; and hand injuries.  Plaintiffs' injuries are of a continuing nature and cannot be

finally quantified at this time.  They will do so by the time of trial.  Plaintiffs' damages

are in excess of the Court's jurisdictional monetary minimum.

102.  As a direct, proximate, and substantial result of the acts or omissions of

Defendants City of San Diego, San Diego Police Department, Shelley Zimmerman,

and each of them, Plaintiffs Luis and Hedy have incurred costs for medical treatment for their injuries.  Because their injuries are of a continuing nature, they cannot finally quantify them at this time.  They will do so at the time of trial.

103.  As a direct, proximate, and substantial result of the acts or omissions of Defendants City of San Diego, San Diego Police Department, and Shelley Zimmerman, and each of them, Plaintiffs Luis and Hedy have suffered continuing injuries that resulted in lost earnings.  These losses cannot be finally quantified at this time.  Plaintiffs will do so at the time of trial.

**SEVENTH CAUSE OF ACTION: CONSTITUTIONALLY**

**INADEQUATE SYSTEM OF INVESTIGATION**

**OF COMPLAINTS OF WRONGDOINGS BY CITIZENS**

**(<u>Monell</u> Municipal Liability, Civil Rights Act 42 U.S.C. 1983) –**

**BY PLAINTIFFS DIEGO, LUIS, AND HEDY**

**AGAINST DEFENDANTS, CITY OF SAN DIEGO,**

**SAN DIEGO POLICE DEPARTMENT,**

**AND SHELLEY ZIMMERMAN**

104.  Plaintiffs repeat and re-plead as though fully set forth in this Paragraph 104 above paragraphs 1 through 42, and 64 through 70, inclusive.

105.  Defendants City of San Diego, San Diego Police Department, and Shelley Zimmerman, in her official capacity,  as the operators, administrators, final policymakers and final decision-makers of the Department, through widespread, official written and unwritten policies, procedures, customs, and usages with the force of law, in like manner as their failure to screen and hire properly, have knowingly failed to maintain adequate and proper Departmental investigative and disciplinary policies, procedures, practices, and customs sufficient to prevent the Department's police officers from engaging in a systematic pattern and practice of intentional misconduct consisting of assault, battery, the use of excessive and injurious physical force, the imposition of summary punishment without due process of law, false arrest, illegal detention, and falsification of official records resulting in the denial of the rights, privileges, and immunities of members of the general public generally, and of Plaintiffs Diego, Luis, and Hedy specifically,  as guaranteed by the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.

106.  On the night of July 29, 2014, such acts or omissions by Defendants City of San Diego, San Diego Police Department, and Shelley Zimmerman, and each of them, set in motion the series of events by which Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and

each of them, wrongfully and illegally detained, arrested, assaulted, battered, and/or beat Plaintiffs Diego, Luis, and Hedy in violation of their constitutional rights to be free from illegal detention and illegal arrest and the use of excessive, illegal, injurious physical force against their persons.

107.   Based upon the Department's long history of repeated constitutional deprivations, the widespread written and unwritten official policies, customs, and usages undergirding those deprivations, and the half-hearted, inadequate attempts to correct the documented deficiencies, Defendants City of San Diego, San Diego Police Department, and Shelley Zimmerman, and each of them, knew or should have known that the Department's code of silence and lackadaisical approach to discipline would motivate San Diego police officers, including not by way of limitation, Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them, to engage in pervasive, unconstitutional misconduct, posing an unreasonable risk of substantial constitutional injury to Plaintiffs Diego, Luis, and Hedy and others similarly situated.  Such Defendants' inadequate attempts to correct the Department's documented deficiencies and to discipline offending officers manifested their deliberate indifference to and/or tacit authorization of the violation of Plaintiffs' constitutional rights.  The affirmative link

between such Defendants' historic inaction and Plaintiffs' constitutional injuries is manifested in the "Teflon culture" within the Department by which a two-tier system of justice insulated offending officers, including not by way of limitation, Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them, from discipline for constitutional deprivations.

108. Further, since November 12, 2014, Defendant Zimmerman had direct knowledge of the contents of the video surveillance records and access to the falsified official reports. Her failure to initiate any formal criminal investigations or judicial proceedings by which to bring the offending officers to justice manifests her deliberate and/or callous indifference to and/or her tacit approval of the deprivation of Plaintiffs' constitutional rights and her continuing failure to prevent such violations generally.

109. At all times alleged in this Complaint, Defendants City of San Diego, San Diego Police Department, and Shelley Zimmerman, and each of them, had notice of, consented to and/or ratified the acts or omissions of each other and/or the acts and omissions of Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and by such notice, consent, and/or ratification further evinced the former's deliberate indifference and/or conscious disregard of the constitutional rights of Plaintiffs and others similarly situated.

110.  The acts or omissions of Defendants City of San Diego, San Diego Police Department, Shelley Zimmerman, and each of them, directly, proximately, and substantially caused Plaintiffs Diego, Luis, and Hedy to suffer emotional distress and/or physical injuries.

111.  As a direct, proximate, and substantial result of the acts or omissions of Defendants City of San Diego, San Diego Police Department , and Shelley Zimmerman, and each of them, Plaintiffs Diego, Luis, and Hedy suffered emotional distress, shock, trauma, pain, suffering, nervous anxiety, and injury to their health and strength, including not by way of limitation: lacerations; bruises; muscle strains; headaches; double vision; exacerbation of pre-existing conditions; arm, shoulder, back, and neck pain; and hand injuries.  Plaintiffs' injuries are of a continuing nature and cannot be finally quantified at this time.  They will do so by the time of trial. Plaintiffs' damages are in excess of the Court's jurisdictional monetary minimum.

112.  As a direct, proximate, and substantial result of the acts or omissions of Defendants City of San Diego, San Diego Police Department, and Shelley Zimmerman, and each of them, Plaintiffs Luis and Hedy have incurred costs for medical treatment for their injuries.  Because their injuries are of a continuing nature, they cannot finally quantify them at this time.  They will do so at the time of trial.

113.  As a direct, proximate, and substantial result of the acts or omissions of Defendants City of San Diego, San Diego Police Department, and Shelley Zimmerman, and each of them, Plaintiffs Luis and Hedy have suffered continuing injuries that resulted in lost earnings.  These losses cannot be finally quantified at this time.  Plaintiffs will do so at the time of trial.

**EIGHTH CAUSE OF ACTION:  HARASSMENT**

**(Civil Rights Act, 42 U.S.C. sec. 1983) – BY PLAINTIFF LUIS**

**AGAINST DEFENDANTS CITY OF SAN DIEGO,**

**SAN DIEGO POLICE DEPARTMENT,**

**SHELLEY ZIMMERMAN, T. WETZEL, MICHAEL USREY,**

**NATHAN PARGA, KELVIN LUJAN, SAM EULER,**

**ALI BAKHSHI, AND TWO UNNAMED**

**MEMBERS OF THE DEPARTMENT**

114.  Plaintiff repeats and re-pleads as though fully set forth in this Paragraph 114 above paragraphs 1 through 42, and 64 through 70, inclusive.

115.  Defendants T. Wetzel, Michael Usrey, Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them, and other unknown officers of the Department, while acting under color of law, i.e.,

the statutes, ordinances, regulations, and official written and unwritten policies,

customs, and usages with the force of law, within the course and scope of their

employment as San Diego police officers, and while exercising their authority as San

Diego police officers, have knowingly, repeatedly, and illegally stopped, detained,

arrested, handcuffed, and questioned Luis without warrant, probable cause, or

reasonable belief, privilege, or permission, on July 28, 2014, July 29, 2014 (the

incident), and December 24, 2014.  After lengthy detentions on July 28, 2014, and

December 24, 2014, Luis was released from custody without further explanation.  By

such acts or omissions, such Defendants, and each of them, engaged in an illegal

pattern and practice of harassment and seizure resulting in the repeated violations of

Luis's constitutional rights as expressed in the Fourth, Fifth, and Fourteenth

Amendments of the United States Constitution

116.  Such a pattern and practice of intentional harassment and illegal detention

aimed at Luis by Defendants T. Wetzel, Michael Usrey, Nathan Parga, Kelvin Lujan,

Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and other

unknown members of the Department, and each of them, comprised a series of events

set in motion by Defendants City of San Diego, San Diego Police Department, and

Shelley Zimmerman (in her official capacity as the final policymaker and decision-

maker of the Department), who, in like manner as their failure to screen and hire properly,  knew or should have known that their subordinates were violating Luis's constitutional rights.

117.  Since November 12, 2014, Defendant Zimmerman had direct knowledge of the contents of the video surveillance records and access to the falsified official reports.  Her failure to initiate any formal criminal investigations or judicial proceedings by which to bring the offending officers to justice manifests her deliberate and/or callous indifference to and/or her tacit approval of the deprivation of Luis's constitutional rights and her continuing failure to prevent such violations generally, including not by way of limitation, the December 24, 2014, detention of Luis.

118.  The Department's traffic-stop data reveals a problem with racial profiling by its police officers.  Luis is Hispanic: he is Peruvian-American.  He also has tattoos. Because of the "good guys and bad guys" attitude of the police officers patrolling City Heights, and because of his ethnicity, he has been singled out for "special treatment" by that division's officers and subjected to repetitive, indefensible detentions and arrests.  His mistreatment is a direct, proximate, and substantial result of and affirmatively linked to the series of events set in motion by Defendants City of San Diego, San Diego Police Department, and Shelley Zimmerman, and each of them,

whose long-term, official written and unwritten policies, practices, procedures, customs and usages with the force of law spawned the Department's "code of silence, the two-tier system of justice within the Department, the lackadaisical approach to discipline, and the racial profiling of minorities. Such Defendants, and each of them, knew or should have known that their obvious deliberate indifference to and callous disregard of Luis's constitutional rights, and those of others similarly situated, would result in their subordinates' repeated harassment of Luis and others. Instead of deterring or disciplining such misconduct, they did nothing at all. Their tolerance of police officer misconduct generally, and/or the harassment of Luis directly, amounted to a policy that itself repudiated Luis's constitutional rights and was the foreseeable, moving force behind their subordinates' pursuit of Luis and the deprivation of his constitutional rights. Luis's police- officer persecutors had free rein to harass him because they knew that the Department's administrators and/or their own supervisors would do nothing about it.

119. Defendants City of San Diego, San Diego Police Department, and Shelley Zimmerman, and each of them, as operators, administrators, final policymakers, and final decision-makers of the Department, also had notice of, consented to, and/or ratified the acts and omissions of each other and of Defendants T. Wetzel, Michael

Usrey, Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed

members of the Department, and other unknown members of the Department, and by

such notice, consent, and/or ratification demonstrated their deliberate indifference

and/or conscious disregard of Luis's constitutional rights.

120.  Such acts or omissions by Defendants City of San Diego, San Diego Police

Department, Shelley Zimmerman, T. Wetzel, Michael Usrey, Nathan Parga, Kelvin

Lujan, Sam Euler, Ali Bakhshi, two unnamed members of the Department, and other

unknown members of the Department, directly, proximately, and substantially resulted

in Luis's suffering emotional distress and physical injuries.

121.  As a direct, proximate, and substantial result of the acts or omissions of

Defendants City of San Diego, San Diego Police Department, Shelley Zimmerman, T.

Wetzel, Michael Usrey, Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two

unnamed members of the Department, and each of them, Luis has suffered emotional

distress, shock, trauma, pain, suffering, nervous anxiety, humiliation, and injury to his

health and strength, including not by way of limitation: lacerations; bruises; muscle

strains; headaches; double vision; exacerbation of pre-existing conditions; arm,

shoulder, back, and neck pain; and hand injuries.  Plaintiff's injuries are of a

continuing nature and cannot be finally quantified at this time.  He will do so by the

time of trial.  Plaintiffs' damages are in excess of the Court's jurisdictional monetary minimum.

122.  As a direct, proximate, and substantial result of the acts or omissions of Defendants City of San Diego, San Diego Police Department, Shelley Zimmerman, T. Wetzel, Michael Usrey, Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them, Luis has incurred costs for medical treatment for his injuries.  Because his injuries are of a continuing nature, he cannot at this time precisely quantify the total costs of his treatment.  He will do so by the time of trial.

123.  As a direct, proximate, and substantial result of the acts or omissions of Defendants City of San Diego, San Diego Police Department, Shelley Zimmerman, T. Wetzel, Michael Usrey, Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them, Luis has suffered continuing injuries that resulted in lost earnings.  At this time, he cannot finally quantify such losses.  By the time of trial he will do so.

124.  The acts or omissions of Defendants T. Wetzel, Michael Usrey, Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them, and other unknown members of the Department,

demonstrated evil and/or malicious intent and/or callous and/or reckless disregard for

Plaintiff's rights, meriting the award of punitive damages according to federal law.

## NINTH CAUSE OF ACTION: ASSAULT AND BATTERY –
## BY PLAINTIFFS DIEGO, LUIS, AND HEDY AGAINST DEFENDANTS
## NATHAN PARGA, KELVIN LUJAN, SAM EULER,
## ALI BAKHSHI, AND TWO UNKNOWN
## MEMBERS OF THE DEPARTMENT

125.  Plaintiffs repeat and re-plead as though fully set forth in this Paragraph

125 above paragraphs 1 through 42, inclusive.

126.  On the night of July 29, 2014, Defendants Nathan Parga, Kelvin Lujan,

Sam Euler, Ali Bakhshi, and two unknown members of the Department, and each of

them, while acting under color of law, i.e., statutes, ordinances, regulations, and

official written and unwritten policies, customs, and usages with the force of law,

within the course and scope of their employment as San Diego police officers, and

while exercising their authority as San Diego police officers, without search or arrest

warrants, probable cause, or reasonable belief, in and about the Store did  intentionally,

unlawfully, and maliciously detain, arrest, imprison, assault, batter, beat and/or injure

Plaintiffs Diego, Luis, and Hedy by the use of offensive, unprivileged, nonconsensual,

physical force.  Had such Defendants, and each of them, been acting reasonably, they would have known or should have known that their acts or omissions were unreasonable, excessive, and illegal.

127.  The acts or omissions of Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unknown members of the Department, and each of them, directly, proximately, and substantially caused Plaintiffs Diego, Luis, and Hedy to suffer emotional distress and/or physical injuries.

128.  As a direct, proximate, and substantial result of the acts or omissions of Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them, Plaintiffs Diego, Luis, and Hedy suffered emotional distress, shock, trauma, pain, suffering, nervous anxiety, humiliation, and/or  injury to their health and strength, including not by way of limitation: lacerations; bruises; muscle strains; headaches; double vision; exacerbation of pre-existing conditions; arm, shoulder, back, and neck pain; and hand injuries. Plaintiffs' injuries are of a continuing nature and cannot be finally quantified at this time.  They will do so by the time of trial.  Plaintiffs' damages are in excess of the Court's jurisdictional monetary minimum.

129.  As a direct, proximate, and substantial result of the acts or omissions of Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them, Plaintiffs Luis and Hedy have incurred costs for medical treatment for their injuries.  Because their injuries are of a continuing nature, they cannot at this time precisely quantify the total costs of their treatment. They will do so by the time of trial.

130.  As a direct, proximate, and substantial result of the acts or omissions of Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them, Plaintiffs Luis and Hedy have suffered continuing injuries that resulted in lost earnings.  At this time, they cannot finally quantify such losses.  They will do so by the time of trial.

131.  The acts or omissions of Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them, constituted oppression, fraud, and malice within the meaning of California Civil Code section 3294, et. seq., and punitive damages should be assessed against them, and each of them.

**TENTH CAUSE OF ACTION: INTENTIONAL INFLICTION**

**OF EMOTIONAL DISTRESS – BY PLAINTIFFS DIEGO, LUIS,**

**AND HEDY AGAINST DEFENDANTS T. WETZEL, MICHAEL USREY,**

**NATHAN PARGA, KELVIN LUJAN,**

**SAM EULER, ALI BAKHSHI, AND**

**TWO UNNAMED MEMBERS OF THE DEPARTMENT**

132.  Plaintiffs repeat and re-plead as though fully set forth in this Paragraph 132 above paragraphs 1 through 42, and 126, inclusive.

133.  On the night of July 29, 2014, Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unknown members of the Department, and each of them, while acting under color of law, i.e., statutes, ordinances, regulations, and official written and unwritten policies, customs, and usages with the force of law, within the course and scope of their employment as San Diego police officers, while exercising their authority as San Diego Police officers, without search or arrest warrants, probable cause, or reasonable belief, in and about the Store did  intentionally, unlawfully, and maliciously detain, arrest, imprison, assault, batter, beat, and/or injure Plaintiffs Diego, Luis, and Hedy by the use of offensive, unprivileged, nonconsensual, physical force.

134.  Subsequent to the detention, arrest, and imprisonment of Plaintiffs Diego, Luis, and Hedy, Defendants T. Wetzel and Michael Usrey conspired with Defendants

Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unknown members of

the Department, to compose, file, review, approve, and/or ratify falsified official

reports of the incident in an attempt to cover up the true facts surrounding the incident.

135.  The acts or omissions of Defendants T. Wetzel, Michael Usrey, Nathan

Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unknown members of the

Department, and each of them, were done deliberately, or with reckless disregard of

the probability of causing Plaintiffs serious injury and/or serious emotional distress;

were outrageous and beyond the bounds of behavior tolerated by civilized society; and

were accomplished with intent to inflict physical injury and harm and/or emotional

distress well in excess of that reasonably necessary to their interaction with Plaintiffs,

and each of them. Had such Defendants, and each of them, been acting reasonably,

they would have known or should have known that their acts and omissions were

excessive, extreme, outrageous and illegal.

136.  The acts or omissions of Defendants T. Wetzel, Michael Usrey, Nathan

Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the

Department, and each of them, directly, proximately, and substantially caused

Plaintiffs Diego, Luis, and Hedy to suffer severe emotional distress and/or physical

injuries.

137.  As a direct, proximate, and substantial result of the acts or omissions of Defendants T. Wetzel, Michael Usrey, Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them, Plaintiffs suffered severe emotional distress, shock, trauma, pain, suffering, nervous anxiety, and injury to their health and strength, including not by way of limitation: lacerations; bruises; muscle strains; headaches; double vision; exacerbation of pre-existing conditions; arm, shoulder, back, and neck pain; and hand injuries.  Plaintiffs' injuries are of a continuing nature and cannot be finally quantified at this time.  They will do so by the time of trial.  Plaintiffs' damages are in excess of the Court's jurisdictional monetary minimum.

138.  As a direct, proximate, and substantial result of the acts or omissions of Defendants T. Wetzel, Michael Usrey, Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them, Plaintiffs Luis and Hedy have incurred costs for medical treatment for their injuries.  Because their injuries are of a continuing nature, they cannot at this time be precisely quantified.  They will do so at the time of trial.

139.  As a direct, proximate, and substantial result of the acts or omissions of Defendants T. Wetzel, Michael Usrey, Nathan Parga, Kelvin Lujan, Sam Euler, Ali

Bakhshi, and two unnamed members of the Department, and each of them, Plaintiffs Luis and Hedy have suffered continuing injuries that resulted in lost earnings.  At this time, they cannot finally quantify such losses.  They will do so by the time of trial.

140.  The acts or omissions of Defendants T. Wetzel, Michael Usrey, Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them, constituted oppression, fraud, and malice within the meaning of California Civil Code section  3294, et. seq.; and punitive damages should be assessed against them, and each of them.

**ELEVENTH CAUSE OF ACTION: CALIFORNIA CONSTITUTIONAL RIGHTS VIOLATION (CAL. CIV. CODE SEC. 52.1) – BY PLAINTIFFS DIEGO, HEDY, AND LUIS AGAINST DEFENDANTS T. WETZEL, MICHAEL USREY, NATHAN PARGA, KELVIN LUJAN, SAM EULER, ALI BAKHSHI, AND TWO UNNAMED MEMBERS OF THE DEPARTMENT**

141.  Plaintiffs repeat and re-plead as though fully set forth in this Paragraph 141 above paragraphs 1 through 48, 64 through 70, and 126, inclusive.

142.  Plaintiffs have a firmly established right to be free from the use of illegal detention, false arrest, and excessive force using threats of violence and actual violence by police offices according to the Fourth Amendment of the United States Constitution, by operation of the Fourteenth Amendment of the United States Constitution, and Article 1, section 13, of the California Constitution.

143.  The California Legislature has declared that a person violates California's civil rights laws by interfering with another's exercise or enjoyment of his or her rights secured by the United States Constitution, the California Constitution, and federal and state statutory and common law.  Such interference includes the use of intimidation, coercion, threats of violence, and/or violence to deprive any person of his or her constitutional rights.  Cal. Civ. Code sec. 52.1(a).

144.  On the night of July 29, 2014, Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them, while acting under color of law, i.e., statutes, ordinances, regulations, and official written and unwritten policies, customs, and usages with the force of law, within the course and scope of their employment as San Diego police officers, and while exercising their authority as San Diego police officers, without search or arrest warrants, probable cause, or reasonable belief, in and about the Store deprived

Plaintiffs Diego, Luis, and Hedy of their rights to be free from illegal detention, illegal arrest, summary imprisonment, and the use of unreasonable, excessive, and injurious physical force against their persons according to the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution and Article 1, section 13, of the California Constitution.

145.  Defendants T. Wetzel and Michael Usrey, and each of them, had notice of, consented to, and/or ratified the acts or omissions of each other and of Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and conspired with them to cover up the true facts surrounding the incident by composing, filing, reviewing, approving, and/or ratifying falsified official reports regarding the incident to cover up the true facts of the incident.

146.  The acts or omissions of Defendants T. Wetzel, Michael Usrey, Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them, also violated Cal. Civ. Code section 52.1(b).  That provision entitles Plaintiffs to bring a lawsuit against such Defendants, and each of them, seeking civil damages, statutory penalties, equitable relief and/or attorneys' fees for such violation.

147.  The acts or omissions of Defendants T. Wetzel, Michael Usrey, Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them, directly, proximately, and substantially caused Plaintiffs Diego, Luis, and Hedy to suffer emotional distress and/or physical injuries.

148.  As a direct, proximate, and substantial result of the acts or omissions of Defendants T. Wetzel, Michael Usrey, Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them, Plaintiffs Diego, Luis, and Hedy suffered emotional distress, shock, trauma, pain, suffering, nervous anxiety, and injury to their health and strength, including not by way of limitation: lacerations; bruises; muscle strains; headaches; double vision; exacerbation of pre-existing conditions; arm, shoulder, back, and neck pain; and hand injuries. Plaintiffs' injuries are of a continuing nature and will be quantified by the time of trial. Plaintiffs' damages are in excess of the Court's jurisdictional monetary minimum.

149.  As a direct, proximate, and substantial result of the acts or omissions of Defendants T. Wetzel, Michael Usrey, Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them, Plaintiffs Luis and Hedy have incurred costs for medical treatment for their injuries.  Because

their injuries are of a continuing nature, they cannot be finally quantified at this time.

They will be quantified by the time of trial.

150.  As a direct, proximate, and substantial result of the acts or omissions of Defendants T. Wetzel, Michael Usrey, Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them, Plaintiffs Luis and Hedy have suffered continuing injuries that resulted in lost earnings.  At this time, they cannot finally quantify such losses.  They will do so by the time of trial.

151.  The acts or omissions of Defendants T. Wetzel, Michael Usrey, Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them, constituted oppression, fraud, and malice within the meaning of California Civil Code section  3294, et. seq.; and punitive damages should be assessed against them, and each of them.

**TWELFTH CAUSE OF ACTION: NEGLIGENT INFLICTION**

**OF EMOTIONAL DISTRESS BY PLAINTIFF**

**BRUCE CHOURP BY AND THROUGH HIS**

**GUARDIAN AD LITEM KATHERINE LOBATON AGAINST**

**DEFENDANTS NATHAN PARGA, KELVIN LUJAN,**

## SAM EULER, ALI BAKHSHI, AND TWO UNNAMED

## MEMBERS OF THE DEPARTMENT

152.  Plaintiff repeats and re-pleads as though fully set forth in this Paragraph 152 above paragraphs 1 through 42, inclusive.

153.  On the night of July 29, 2014, Defendants Kelvin Lujan, Sam Euler, Nathan Parga, Ali Bakhshi, and two unnamed members of the Department, and each of them, while acting under color of law, i.e., statutes, ordinances, regulations, and official written and unwritten policies, customs, and usages with the force of law, within the course and scope of their employment as San Diego police officers, and while exercising their authority as San Diego police officers, without search of arrest warrants, probable cause, or reasonable belief, intentionally, unlawfully, without permission, and without privilege entered the Store and, in the presence of Plaintiff, age three years, intentionally, unlawfully, outrageously, and maliciously detained, arrested, imprisoned, assaulted, beat, and battered Luis and Hedy.

154.  Standing in the zone of danger approximately three feet away from the physical confrontation inside the Store between Defendants Kelvin Lujan, Sam Euler, Nathan Parga, Ali Bakhshi, and two unnamed members of the Department, and each of them, and Luis and Hedy, Plaintiff saw his brother, Luis, and his mother, Hedy,

violently assaulted, beaten, handcuffed and forcefully taken away.  Such Defendants, and each of them, owed Plaintiff a duty of care to not cause him injury or emotional distress according to the provisions of Cal. Civ. Code secs. 1708 and 1714(a).

155.  As revealed by the video records, Defendants Kelvin Lujan, Sam Euler, Nathan Parga, Ali Bakhshi, and two unnamed members of the Department, and each of them, knew of or should have known of Plaintiff's presence in the Store and/or or recklessly disregarded his presence while perpetrating their attacks on Luis and Hedy. As part of the cover-up of the true facts surrounding the incident by such Defendants, and each of them, Bruce's presence was never mentioned in the falsified official reports of the incident.

156.  As a direct, proximate, and substantial result of the acts or omissions of Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them, Plaintiff suffered serious emotional distress, shock, trauma, pain, suffering, nervous anxiety, and injury to his health and strength, including not by way of limitation, nightmares, continuing abject fear of the police, acting out of the violence of the incident, and bedwetting.  Plaintiff's injuries are of a continuing nature and cannot be finally quantified at this time.  Plaintiff will

do so by the time of trial.  Plaintiff's damages are in excess of the Court's

jurisdictional monetary minimum.

157.  As a direct, proximate, and substantial result of the acts or omissions of

Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed

members of the Department, and each of them, Plaintiff has incurred costs for medical

treatment for his injuries.  Because his injuries are of a continuing nature, they cannot

be finally quantified at this time.  Plaintiff will do so at trial.

## THIRTEENTH CAUSE OF ACTION: INVASION OF PRIVACY

## BY PLAINTIFFS DIEGO, LUIS, AND HEDY AGAINST DEFENDANTS

## NATHAN PARGA, KELVIN LUJAN,

## SAM EULER, ALI BAKHSHI,

## AND TWO UNNAMED MEMBERS OF THE DEPARTMENT

158.  Plaintiffs repeat and re-plead as though fully set forth in this Paragraph

158 above paragraphs 1 through 42, inclusive.

159.  On the night of July 29, 2014, Defendants Nathan Parga, Kelvin Lujan,

Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of

them, while acting under color of law, i.e., statutes, ordinances, regulations, and

official written and unwritten policies, customs, and usages with the force of law,

within the course and scope of their employment as San Diego police officers, and while exercising their authority as San Diego police officers, without search or arrest warrants, probable cause, or reasonable belief, did intentionally, unlawfully, without permission, and without privilege entered the Store to detain, arrest, imprison, assault, and beat Plaintiffs Luis and Hedy, causing them harm by offensive, nonconsensual, injurious physical force that directly, proximately, and substantially caused each of them emotional distress and/or physical injuries.

160.  At the time Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department , and each of them, entered the Store, Plaintiffs Diego, Luis, and Hedy were living in the Store; the Store was closed to the general public; and Plaintiffs had an expectation of privacy as guaranteed by federal decisional law; Article 1, Section 1, of the California Constitution, and attendant California statutory and decisional law.  The acts and omissions of such Defendants, and each of them, constituted an illegal invasion of and deprivation of such Plaintiffs' expectations of privacy, directly, proximately, and substantially causing each of them emotional distress and/or physical injuries.

161.  As a direct, proximate, and substantial result of the acts or omissions of Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed

members of the Department, and each of them, Plaintiffs Diego, Luis, and Hedy

suffered emotional distress, shock, trauma, pain, suffering, nervous anxiety, and/or

injury to their health and strength, including not by way of limitation: lacerations;

bruises; muscle strains; headaches; double vision; exacerbation of pre-existing

conditions; arm, shoulder, back, and neck pain; and hand injuries.  Plaintiffs' injuries

are of a continuing nature and cannot be finally quantified at this time.  They will do so

by the time of trial.  Plaintiffs' damages are in excess of the Court's jurisdictional

monetary minimum.

162.  As a direct, proximate, and substantial result of the acts or omissions of

Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed

members of the Department, and each of them, Plaintiffs Luis and Hedy have incurred

costs for medical treatment for their injuries.  Because their injuries are of a continuing

nature, they cannot at this time precisely quantify the total costs of their treatment.

However by the time of trial, they will seek leave of Court to amend this Complaint to

reflect such costs.

163.  As a direct, proximate, and substantial result of the acts or omissions of

Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed

members of the Department, and each of them, Plaintiffs Luis and Hedy have suffered

continuing injuries that resulted in lost earnings.  At this time, they cannot finally

quantify such losses.  They will do so at the time of trial.

164.  The acts or omissions of Defendants Nathan Parga, Kelvin Lujan, Sam

Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them,

constituted oppression, fraud, and malice within the meaning of California Civil Code

section 3294, et. seq.; and punitive damages should be assessed against them, and each

of them.

**FOURTEENTH CAUSE OF ACTION:**

**VIOLATION OF CAL. CIV. CODE SEC. 1708.8 – BY**

**PLAINTIFFS HEDY AND LUIS AGAINST DEFENDANTS**

**NATHAN PARGA, KELVIN LUJAN,**

**SAM EULER, ALI BAKHSHI,**

**AND TWO UNKNOWN MEMBERS OF THE DEPARTMENT**

165.  Plaintiffs repeat and re-plead as though fully set forth in this Paragraph

165 above paragraphs 1 through 42, inclusive.

166.  On the night of July 29, 2014, Defendants Nathan Parga, Kelvin Lujan,

Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of

them, while acting under color of law, i.e., statutes, ordinances, regulations, and

official written and unwritten policies, customs, and usages with the force of law,

within the course and scope of their employment as San Diego police officers, and

while exercising their authority as San Diego police officers, without search or arrest

warrants, probable cause, or reasonable belief, did forcefully, intentionally, unlawfully,

without permission, and without privilege enter the closed Store and detain, arrest,

imprison, assault, beat, and batter Plaintiffs Luis and Hedy, causing them harm by

offensive, non-consensual, injurious physical force that directly and proximately

caused each of them emotional distress and/or physical injuries.

167.  At the time of such entry, the Store was Luis and Hedy's abode and was

closed to the general public.  Accordingly, they had an expectation of privacy as

guaranteed by federal decisional law; Article 1, Section 1, of the California

Constitution; and attendant California statutory and decisional law.  Thus, the

nonconsensual, intentional entry into the closed Store by Defendants Nathan Parga,

Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department,

and each of them, constituted an illegal invasion of and deprivation of such Plaintiffs'

respective expectations of privacy and their rights, privileges, and immunities to be

free from illegal seizure and the use of excessive force according to the Fourth and

Fourteenth Amendments of the United States Constitution, and Section 13, Article 1, of the California Constitution.

168.  Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them, knew or should have known that Luis's and Hedy's photographs and/or likenesses would be captured as part of the detention, arrest, incarceration, and "booking" processes and that such photographs or likenesses would then be published in the public domain, including not by way of limitation, the news media and/or Internet websites depicting "booking photos," directly, proximately, and substantially causing each of them embarrassment, humiliation, emotional distress, and/or physical injuries, thereby invoking the remedies provided by Section 1708.8(c).

169.  As a direct, proximate, and substantial result of the acts or omissions of Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them, Plaintiffs Luis and Hedy suffered emotional distress, shock, trauma, pain, suffering, nervous anxiety, humiliation, and injury to their health and strength, including not by way of limitation: lacerations; bruises; muscle strains; headaches; double vision; exacerbation of pre-existing conditions; arm, shoulder, back, and neck pain; and hand injuries.  Plaintiffs' injuries

are of a continuing nature and cannot be finally quantified at this time.  They will do so by the time of trial.  Plaintiffs' damages are in excess of the Court's jurisdictional monetary minimum.

170.  As a direct, proximate, and substantial result of the acts or omissions of Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them, Plaintiffs Luis and Hedy have incurred costs for medical treatment for their injuries.  Because their injuries are of a continuing nature, they cannot at this time precisely quantify the total costs of their treatment. They will do at the time of trial.

171.  As a direct, proximate, and substantial result of the acts or omissions of Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them, Plaintiffs Luis and Hedy have suffered continuing injuries that resulted in lost earnings.  At this time, they cannot finally quantify such losses.  They will do so by the time of trial.

172.  The acts or omissions of Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them, constituted oppression, fraud, and malice within the meaning of California Civil Code

section 3294, et. seq.; and punitive damages should be assessed against them, and each of them.

## FIFTEENTH CAUSE OF ACTION: NEGILENCE –

## BY PLAINTIFFS DIEGO, LUIS, AND HEDY AGAINST

## DEFENDANTS NATHAN PARGA,

## KELVIN LUJAN, SAM EULER,

## ALI BAKHSHI AND TWO UNNAMED

## MEMBERS OF THE DEPARTMENT

173.  Plaintiff repeats and re-pleads as though fully set forth in this Paragraph 173 above paragraphs 1 through 42, inclusive.

174.  On the night of July 29, 2014, Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them, owed a duty of care toward Plaintiffs, and each of them, to refrain from causing injury to the latter as provided by Cal. Civ. Code secs. 1708 and 1714(a).  In and about the Store on July 29, 2014, while acting under color of law, i.e., statutes, ordinances, regulations, and official written and unwritten policies, customs, and usages with the force of law, within the course and scope of their employment as San Diego police

officers, and while exercising their authority as San Diego police officers, without search or arrest warrants, probable cause, or reasonable belief, such Defendants, and each of them, did negligently and unlawfully detain, arrest, imprison, assault, beat, and batter, Plaintiffs Diego, Luis, and Hedy, causing them harm by offensive, non-consensual and/or injurious physical force that directly, proximately, and substantially caused each of them emotional distress and/or physical injuries, thereby breaching such Defendants' duty of care towards Plaintiffs, and each of them.

175.  As a direct, proximate, and substantial result of the acts or omissions of Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them, Plaintiffs Diego, Luis, and Hedy suffered  emotional distress, shock, trauma, pain, suffering, nervous anxiety, and/or physical injury to their health and strength, including not by way of limitation: lacerations; bruises; muscle strains; headaches; double vision; exacerbation of pre-existing conditions; arm, shoulder, back, and neck pain; and hand injuries.  Plaintiffs' injuries are of a continuing nature and cannot be finally quantified at this time.  They will do so by the time of trial.  Plaintiffs' damages are in excess of the Court's jurisdictional monetary minimum.

176.  As a direct, proximate, and substantial result of the acts or omissions of Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them, Plaintiffs Luis and Hedy have incurred costs for medical treatment for their injuries.  Because their injuries are of a continuing nature, they cannot at this time precisely quantify the total costs of their treatment. They will do so by the time of trial.

177.  As a direct, proximate, and substantial result of the acts or omissions of Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them, Plaintiffs Luis and Hedy have suffered continuing injuries that resulted in lost earnings.  At this time, they cannot finally quantify such losses.  They will do so by the time of trial.

## SIXTEENTH CAUSE OF ACTION: INJUNTIVE RELIEF BY ALL PLAINTIFFS AGAINST DEFENDANTS CITY OF SAN DIEGO SAN DIEGO POLICE DEPARTMENT, AND SHELLEY ZIMMERMAN

178.  Plaintiff repeats and re-pleads as though fully set forth in this Paragraph 178 above paragraphs 1 through 42, and 64 through 70, 84 through 87, and 115 through 119, inclusive.

179.  Unless enjoined, Defendants City of San Diego, San Diego Police Department, and Shelley Zimmerman (in her official capacity as the final, internal policymaker and decision-maker of the Department), and each of them, as the operators, administrators, final policymakers, and final decision-makers of the Department will continue to engage in the described unlawful and unconstitutional acts, policies, procedures, and customs in violation of the constitutional rights of Plaintiffs and others similarly situated.

180.  Plaintiffs and others similarly situated in the City of San Diego face a real, immediate, direct, proximate, and substantial threat of repeated and irreparable constitutional injury as a direct, proximate, and substantial result of the unlawful, unconstitutional misconduct of San Diego police officers and the unconstitutional written and unwritten, official policies, procedures, customs and usages of Defendants City of San Diego, San Diego Police Department, and Shelley Zimmerman, and each of them.  Plaintiffs have no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Luis Jesus Lobaton, Hedy Julca, Diego Steven Lobaton, and Bruce Chourp, by and through his Guardian Ad Litem, Katherine Lobaton, pray for judgment against Defendants, and each of them, as follows:

**FIRST CAUSE OF ACTION**:

   1.  Exemplary damages according to proof;

   2.  General damages according to proof;

   3.  Sums incurred for past and future medical treatment, loss of income, and out-of-pocket expenses;

   4.  Interest from the date of the incident to the time of judgment;

   5.  Attorneys' fees as provided by statute;

   6.  Costs of suit herein;

   7.  And such other and further relief as the Court may deem proper.

**SECOND CAUSE OF ACTION**:

   1.  Exemplary damages according to proof;

   2.  General damages according to proof;

   3.  Sums incurred for past and future medical treatment, loss of income, and out-of-pocket expenses;

   4.  Interest from the date of the incident to the time of judgment;

   5.  Attorneys' fees as provided by statute;

   6.  Costs of suit herein;

   7.  And such other and further relief as the Court may deem proper.

**THIRD CAUSE OF ACTION**:

1. General damages according to proof;

2. Sums incurred for past and future medical treatment, loss of income, and out-of-pocket expenses;

3. Interest from the date of the incident to the time of judgment;

4. Attorneys' fees as provided by statute;

5. Costs of suit herein;

6. And such other and further relief as the Court may deem proper.

**FOURTH CAUSE OF ACTION**:

1. General damages according to proof;

2. Sums incurred for past and future medical treatment, loss of income, and out-of-pocket expenses;

3. Interest from the date of the incident to the time of judgment;

4. Attorneys' fees as provided by statute;

5. Costs of suit herein;

6. And such other and further relief as the Court may deem proper.

//

//

**FIFTH CAUSE OF ACTION**:

1. Exemplary Damages according to proof;

2. General damages according to proof;

3. Sums incurred for past and future medical treatment, loss of income, and out-of-pocket expenses;

4. Interest from the date of the incident to the time of judgment;

5. Attorneys' fees as provided by statute;

6. Costs of suit herein;

7. And such other and further relief as the Court may deem proper.

**SIXTH CAUSE OF ACTION**:

1. General damages according to proof;

2. Sums incurred for past and future medical treatment, loss of income, and out-of-pocket expenses;

3. Interest from the date of the incident to the time of judgment;

4. Attorneys' fees as provided by statute;

5. Costs of suit herein;

6. And such other and further relief as the Court may deem proper.

//

**SEVENTH CAUSE OF ACTION**:

1. General damages according to proof;

2. Sums incurred for past and future medical treatment, loss of income, and out-of-pocket expenses;

3. Interest from the date of the incident to the time of judgment;

4. Attorneys' fees as provided by statute;

5. Costs of suit herein;

6. And such other and further relief as the Court may deem proper.

**EIGHTH CAUSE OF ACTION**

1. Exemplary damages according to proof against Defendants Nathan Parga, Kelvin Lujan, Sam Euler, Ali Bakhshi, and two unnamed members of the Department, and each of them ;

2. General damages according to proof;

3. Sums incurred for past and future medical treatment, loss of income, and out-of-pocket expenses;

4. Interest from the date of the incident to the time of judgment;

5. Attorneys' fees as provided by statute;

//

6. Costs of suit herein;

7. And such other and further relief as the Court may deem proper.

**NINTH CAUSE OF ACTION**:

1. Exemplary damages according to proof;

2. General damages according to proof;

3. Sums incurred for past and future medical treatment, loss of income, and out-of-pocket expenses;

4. Interest from the date of the incident to the time of judgment;

5. Costs of suit herein;

6. And such other and further relief as the Court may deem proper.

**TENTH CAUSE OF ACTION**:

1. Exemplary damages according to proof;

2. General damages according to proof;

3. Sums incurred for past and future medical treatment, loss of income, and out-of-pocket expenses;

4. Interest from the date of the incident to the time of judgment;

5. Costs of suit herein;

6. And such other and further relief as the Court may deem proper.

**ELEVENTH CAUSE OF ACTION**:

1. Exemplary damages according to proof;

2. General damages according to proof;

3. Sums incurred for past and future medical treatment, loss of income, and out-of-pocket expenses;

4. Statutory damages according to proof;

5. Interest from the date of the incident to the time of judgment;

6. Attorneys' fees as provided by statute;

7. Costs of suit herein;

8. And such other and further relief as the Court may deem proper.

**TWELFTH CAUSE OF ACTION**:

1. General compensatory damages according to proof;

2. Sums incurred for past and future medical treatment, loss of income, and out-of-pocket expenses;

3. Interest from the date of the incident to the time of judgment;

4. Costs of suit herein;

5. And such other and further relief as the Court may deem proper.

//

**THIRTEENTH CAUSE OF ACTION**:

1. Exemplary damages according to proof;

2. General damages according to proof;

3. Sums incurred for past and future medical treatment, loss of income, and out-of-pocket expenses;

4. Interest from the date of the incident to the time of judgment;

5. Costs of suit herein;

6. And such other and further relief as the Court may deem proper.

**FOURTEENTH CAUSE OF ACTION**:

1. Exemplary damages according to proof;

2. General damages according to proof;

3. Sums incurred for past and future medical treatment, loss of income, and out-of-pocket expenses;

4. Statutory damages according to proof;

5. Interest from the date of the incident to the time of judgment;

6. Attorneys' fees as provided by statute;

7. Costs of suit herein;

8. And such other and further relief as the Court may deem proper.

**FIFTEENTH CAUSE OF ACTION**:

1. General compensatory damages according to proof;

2. Sums incurred for past and future medical treatment, loss of income, and out-of-pocket expenses;

3. Interest from the date of the incident to the time of judgment;

4. Costs of suit herein;

5. And such other and further relief as the Court may deem proper.

**SIXTEENTH CAUSE OF ACTION**:

1. A declaration according to 28 U.S.C. secs. 2201-2202 that the complained of acts, omissions, misconduct, policies, procedures, rules, regulations, and customs engaged in by Defendants, and each of them, violate the legal and constitutional rights of Plaintiffs and others similarly situated in the City of Dan Diego.

2. Permanently enjoining Defendants, and each of them, and their agents, employees, successors, and authorized representatives and all other acting in concert with them from engaging in the unlawful and unconstitutional acts, omissions, misconduct, policies, procedures, rules, regulations, customs, and

//

practices set forth in this Complaint, including not by way of limitation the harassment of Luis.

3.  Directing Defendants, and each of them, to set forth policies and procedures as may be necessary and proper with respect to the following:

    a.  Ensuring compliance with constitutional standards governing the rules of arrest and the use of force relating to detentions and arrest;

    b.  Providing adequate training of all police officers in the laws of search, seizure,  arrest, and the use of lawful force in effecting the arrest of citizens and of the limitations of the use of such force by police officers acting under color of law;

    c.  Establishing a system that allows an immediate, on-duty supervisor readily to access any historical record of any police officer who has used force in a period of at least the last five (5) years, including the identity of the officer(s) involved in the use of force, the file number(s) of the report(s) in which the use of force is reported, and a description of the nature of the force used, e.g., intentional and/or accidental striking of any person with closed fists, batons, flashlights, saps, leaded  gloves; requiring periodic review of such records whenever a

supervisor prepares a departmental evaluation of such records for

patterns of unjustified use of force by police officers; and institution of

disciplinary proceedings where appropriate; requiring review of such

records whenever a supervisor prepares a departmental performance

review of any police officer; and requiring that performance

evaluations include documentation of any patterns concerning the

unjustified use of force.

d.  Providing that in any situation in which force has been used by a

police officer and injury has resulted, there shall be an immediate

administrative review of the use of force to determine whether it

complied with departmental policy and constitutional standards and

whether departmental policy should be modified in view of the

circumstances surrounding the use of such force.

e.  Indexing by individual officer and maintain files of complaints by

members of the public Cal. Govt. Code sec. 910 claims and lawsuits

concerning police misconduct.

f.  Adequately investigating such complaints, claims, and lawsuits; and

using this information to monitor the conduct of police officers.

g.   Requiring periodic psychological testing and counseling of police

officers with a record of using unreasonable or excessive force,

making false arrests, filing false charges, engaging in related acts of

dishonestly, or engaging in racially motivated misconduct and

psychological testing and evaluation of police officers to allow for

detection of psychiatric disorders relating to rage and anger.

h.   Requiring dismissal of police officers who are repeatedly involved in

instances of the unjustified use of or the excessive use of force,

violence, dishonesty, racial, or ethnic bias, or other misconduct.

i.   Requiring that, when any investigation reveals the improper use of

force by a police officer which causes bodily injury, that the matter be

referred to the District Attorney's office for consideration of filing a

criminal complaint.

j.   Requiring that when any police officer who has been judicially

determined to have engaged in a violation of constitutional or civil

rights, whenever a monetary settlement had been made or a judgment

has been rendered based on the use of excessive force by a police

officer, or whenever any arrest has been made as to which a police

officer claims to have been a victim of a crime: 1) a departmental investigation be conducted regardless of any earlier investigation or the findings thereof; 2) the investigators review all evidence introduced at trial or provided by them by any person, and that they interview all known witnesses including plaintiffs' expert trial witnesses, and that they interview plaintiffs' counsel in lay lawsuit alleging officer misconduct; and 3) a full report be made to the Chief of Police with recommendations for or against disciplinary or criminal sanctions against the offending police officer.

k. The appointment of a civilian to head the Department's Internal Affairs Division.

l. The proper funding of the CRB and empowering it to conduct its own independent investigations of citizen complaints of police misconduct.

m. Requiring the adoption of an anti-retaliation policy by which any police officer reporting the misconduct of other San Diego police officers will be protected from retaliation by his or her peers.

//

//

# DEMAND FOR JURY TRIAL

**Plaintiffs demand a jury trial.**

Dated: June 22, 2015

Respectfully submitted,

Randall B. Hamud, Attorney for Plaintiffs

/s/ Randall B. Hamud
Attorney for Plaintiffs